PRUNTY, Plaintiff and Respondent, vs. VANDENBERG and another, Defendants and Appellants: AETNA CASUALTY & SURETY COMPANY, Impleaded Defendant and Apellant. [Four cases.]

*September 5—October 3, 1950.*

470

For the appellants John P. Vandenberg and Connecticut Indemnity Company there was a brief by *Walter Melchior*, attorney, and *Alfred S. Bradford* of counsel, both of Appleton, and oral argument by *Mr. Bradford*.

For the appellant Aetna Casualty & Surety Company there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *E. L. Everson*.

For the respondents there was a brief by *Ben G. Slater* of Milwaukee, and *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and oral argument by *Mr. Slater* and *Mr. A. W. Parnell*.

MARTIN, J.   The collision involved herein occurred about ten o'clock on the bright, clear, summer morning of July 17, 1948, in the right-angle intersection of State Trunk Highway 55 and a town road in the village of Freedom, Outagamie county.   The deceased, Felix L. Prunty, was driving his automobile in a southerly direction on Highway 55 at a speed of about forty miles per hour.   He was accompanied by his daughter, Pamela, who sat in the middle, and his wife, Marie C. Prunty, who sat on the right side in the front seat.   At the point of the accident this black-top arterial highway is twenty-four feet wide with a travelable shoulder on the east side four feet in width.

The intersecting town road upon which Vandenberg was driving his truck in a westerly direction was nineteen feet in width. There was a stop sign for westbound traffic situated thirty-seven feet east of the east line of the black-top of Highway 55.

Except for a few shrubs and small trees, the lines of vision between the Prunty automobile and the Vandenberg truck were unobstructed as they approached the intersection. The level of Highway 55 is several feet higher than the intersecting town road for a distance of a quarter mile or more north of the intersection. On the northwest corner of the intersection a building located about seventy feet north of the north edge of the town road and within a few feet of the west edge of Highway 55 prevented a clear view by Prunty to his right until he reached a point close to seventy feet north of the intersection.

Both Felix L. Prunty and his daughter, Pamela, were killed in the accident. Thus, the only survivor besides Vandenberg to testify was the plaintiff, Marie C. Prunty.

It is the contention of the impleaded defendant that the evidence fails to sustain a finding of causal negligence as to lookout on the part of the deceased Felix Prunty.

In the absence of evidence to the contrary, the presumption is that the deceased motorist in approaching the intersection exercised ordinary care as to lookout. *Ray v. Milwaukee Automobile Ins. Co.* (1939), 230 Wis. 323, 327, 283 N. W. 799; *Witkowski v. Menasha* (1943), 242 Wis. 151, 163, 7 N. W. (2d) 612. However, the presumption that a deceased person exercised due care exists only in the absence of evidence as to what the conduct of the deceased actually was and disappears on the introduction of evidence establishing as a fact the negligence of the deceased. *Smith v. Green Bay* (1937), 223 Wis. 427, 429, 271 N. W. 28.

Marie Prunty testified that they were looking for a schoolhouse or washroom for the purpose of making a stop for the

convenience of the daughter. It is undisputed that near the northwest corner of this intersection was a large white building which to the casual observer driving from the north to the south had the appearance of a schoolhouse having outside toilets. Felix Prunty was on a raised highway and had an opportunity to look to the east and observe for a distance of approximately one-quarter mile. The Vandenberg truck was nine or ten feet high and painted a bright aluminum. It is undisputed that Marie Prunty was looking to the right at the time of the collision, still trying to locate a toilet for her daughter, and that she did not see the Vandenberg truck. She testified:

"*Q.* Were you conscious of anything happening to the car before the actual impact? *A.* All I know is that I felt a sudden slowing down of the car and a terrific thud.

"*Q.* What happened first, the slowing down or the thud? *A.* The slowing down.

"*Q.* Were you conscious of that? *A.* Yes, and then the blinding flash of aluminum, and that's all."

Very shortly thereafter she was rendered unconscious. She did not state that her husband applied the brakes. It is undisputed that there were no brake marks of any kind on the pavement and that the Prunty automobile was continuing in a due southerly direction. The impact occurred in Prunty's lane of travel. There is no evidence of any exclamation on the part of Prunty, no sounding of the horn, and no sudden swerving. There is no evidence that the Prunty car did anything but continue in a straight path.

The Vandenberg truck was traveling about forty miles an hour before it passed the stop sign but when it entered the intersection and at the time of the impact it was going about twenty-five miles an hour.

It was upon these facts that the jury determined that Felix L. Prunty was causally negligent with respect to maintaining a proper lookout and that his negligence was ten per cent.

It was held in *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 427, 295 N. W. 755, that the presumption is one of fact and must yield to evidence establishing the contrary, and inference to the contrary may be drawn from the evidence showing the situation although the person against whom the negligence is charged be dead. In *Reichert v. Rex Accessories Co.* (1938), 228 Wis. 425, 438, 279 N. W. 645, physical facts and photographs were allowed to overrule the presumption. *Haase v. Employers Mut. Liability Ins. Co.* (1947), 250 Wis. 422, 428, 429, 27 N. W. (2d) 468, was an action arising out of an automobile collision within an intersection in which one driver was fatally injured. It was held that the evidence as to the timely, clear, and unobstructed view which the deceased driver had of the icy condition of the intersection and roadway on which the other car was approaching from the left, and of its skidding and continuing to skid without coming to a stop for the stop sign, and as to the deceased driver's manner of approach and time of application of his brakes, and as to the force with which his car struck the other car, was sufficient to overcome the presumption that the deceased driver exercised due care for his own safety as to lookout and to warrant the jury's finding that he was causally negligent as to lookout.

In the present case the jury might well have reasoned that if Prunty had maintained a proper lookout he would have observed in ample time that Vandenberg's truck was out of control, that it gave no sign of stopping or of application of brakes. The evidence does not disclose that Prunty did anything to protect himself except slow down a split second before the impact. It was within the province of the jury to find that he failed to exercise due care for his own safety by keeping a proper lookout. There is sufficient credible evidence in the record to sustain this finding.

The impleaded defendant relies on a schedule of time, space, and relative positions of the two vehicles to furnish to a

mathematical certainty a confirmation of Prunty's diligence as to lookout. The schedule is based on the hypothetical speed of each vehicle at intervals of seconds before the collision. Evidence of speed, time, and distance was necessarily by estimate only and we do not consider that this does or can demonstrate that the collision must have occurred otherwise than as the jury found from the evidence in this case. *Kaestner v. Preferred Accident Ins. Co.* (1950), ante, pp. 6, 8, 42 N. W. (2d) 260.

We have noted the cases cited by impleaded defendant but the facts in each case vary greatly from the facts here where there is sufficient evidence to rebut the presumption of due care with respect to Prunty's lookout.

It is the position of appellants, Vandenberg and his insurer, that Vandenberg was confronted with a sudden emergency not of his own making and that the complaints should be dismissed as to him and his insurer. They take the position under the rule that when one is confronted with an emergency not of his own making he does not have to act with what on calmer reflection would appear to have been the best judgment. *Hanson v. Matas* (1933), 212 Wis. 275, 279, 249 N. W. 505; *Johnson v. Prideaux* (1922), 176 Wis. 375, 379, 187 N. W. 207.

Vandenberg testified that as he approached the intersection with his loaded truck weighing approximately thirteen thousand pounds, he was traveling at a speed of about forty miles per hour. His was a 1939, one-and-one-half ton truck, well overloaded. When he was one hundred to one hundred fifty feet east of the stop sign he tried to apply his foot brake but it was wholly ineffective to either stop or slow up the truck. His attempt to get the truck into second gear and the rise in the grade of the town road as it approached Highway 55 resulted in reducing the speed of the truck to about twenty-five miles per hour as it reached the arterial highway.

It is undisputed that Vandenberg at no time saw the Prunty car before the impact. He decided to "shoot across"

the intersection and take his chances. He turned neither to his right nor left nor did he apply his emergency brake. He took no steps whatsoever to avoid the accident.

Notwithstanding the failure of the foot brake, Vandenberg had ample time and opportunity to avoid this accident either by the application of the emergency brake or by deviation to the wide grass shoulder on the easterly side of Highway 55. He was unjustified in ignoring the possible presence of other vehicles upon the intersecting highway. The collision occurred in the southwest corner of the intersection and had Vandenberg timely seen the Prunty car he could have successfully avoided the accident by changing his course to the right or north. He traveled approximately two hundred feet from where he became aware of the brake failure to the place of impact and he had sufficient time to adopt some course of action to avoid collision with the Prunty car. It is patent beyond controversy that if Vandenberg had looked he would have seen the Prunty car and he would have made some effort to prevent the accident. The emergency doctrine is not applicable under any consideration of the testimony.

Appellants rely on *Puhr v. Chicago & N. W. R. Co.* (1920), 171 Wis. 154, 159, 176 N. W. 767, but in that case the court stated:

"It should be borne in mind that he could and should have discovered the train when he was two hundred fifty feet from the track. He was then going at the moderate rate of twelve to fifteen miles an hour. The natural instinct would be to slow down at once, and in fact it appears that he did. Upon an attempt so to do he would immediately have discovered the inadequacy of his brakes, upon which discovery he would have done something more to avoid the accident than to steer straight onto the tracks, with both hands on the steering wheel. One would expect him to at least seize the lever of the emergency brake, and, as a last resort, turn from the traveled track and run the car into the ditch, if necessary."

In the instant case, Vandenberg failed to do the very things cited above.

The jury's findings with respect to Vandenberg's negligence as to lookout and management and control are well supported by the evidence.

The trial court changed the answers of the jury to subdivision (d) of questions Nos. 1 and 2 so as to find the defendant Vandenberg causally negligent as a matter of law in not coming to a complete stop at the stop sign. It appears from the court's decision that this was not done upon the theory that the defendant was negligent with respect to the application of his foot brake but upon the ground that he was negligent as a matter of law in failing to equip his vehicle with and properly maintain an independent emergency brake as required by statute.

Sec. 85.67, Stats., provides:

"(1) *Brakes.* Every motor vehicle, when operated on a highway, shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, *including two separate means of applying the brakes,* each of which means shall be effective to apply the brakes to at least two wheels, except that a motor driven cycle need be equipped with only one brake. All such brakes shall be maintained in good working order and shall be considered efficient if the vehicle can be stopped under normal conditions within fifty feet when traveling at a rate of speed of twenty miles per hour. . . ."

The evidence is undisputed that Vandenberg never applied his emergency brake at all, and that the emergency brake was wholly insufficient; and that if he had applied it, it would not have brought the truck to a stop at the stop sign. Vandenberg testified that he had never attempted to stop the truck with his emergency brake and had never had it tested for effectiveness when the truck was moving or in motion. He testified further that he knew that his emergency brake would not stop his truck. The mechanic who checked the brakes, at the instruction of the police officer, found that the emergency brake was in a very oily condition, very poorly adjusted, and

the lining was badly worn. He "found it to be of very little use, if any."

Appellants attempt to justify the failure to have the truck adequately equipped with statutory brakes by stating that Vandenberg considered them adequate, that he only used the emergency brake for parking, that it seemed to be ample for the purpose and he had no knowledge that it was not in as good working condition as an emergency brake should be. Further, that Vandenberg did not believe that an emergency brake on any truck was sufficient to stop it at the speed of thirty-five miles an hour when it was as heavily laden as his truck was on the morning of the accident.

These circumstances do not constitute any excuse for failure to comply with the plain and unequivocal terms of the statute which provide that every motor vehicle must be equipped with two sets of brakes, each of which shall be capable of stopping the vehicle under normal conditions within fifty feet when traveling at a speed of twenty miles per hour. It was negligence as a matter of law for Vandenberg to operate his truck without two complete independent braking systems, each of which was able to bring the truck to a stop and within the distance stated in the statute. *Verbeten v. Huettl* (1948), 253 Wis. 510, 519, 34 N. W. (2d) 803; *Rochefort v. Teche Lines, Inc.* (La. App. 1939), 186 So. 751, 755; *People v. Cicardo* (1931), 140 Misc. Rep. 332, 250 N. Y. Supp. 477, 479. The trial court was correct in changing the answers of the jury on this point.

Appellants contend that the question of negligence of the plaintiff, Marie C. Prunty, as to lookout should have been submitted to the jury.

The facts are these: The Prunty car was proceeding at a normal rate of speed along an open and level arterial highway on a bright, clear, summer day. They were looking for a schoolhouse or washroom for the purpose of making a stop for the convenience of the daughter, and Marie C. Prunty was

the logical one to devote her attention to that responsibility. She was sitting on the right-hand side and was situated to give most of her attention to traffic approaching from the right on the intersecting town road. There is nothing in the record to indicate that her husband was not an entirely competent driver. He was proceeding at a normal rate of speed on his own side of the road. There was no occasion for her to be apprehensive of danger from other vehicles or to devote special attention to any such hazards. The accident happened so suddenly and with such speed that there would be no reason or grounds for holding Marie C. Prunty guilty of contributory negligence, and the trial court correctly refused to submit the question to the jury. Before a guest can be held to have assumed the risk of his host's negligence, the evidence must show (1) a hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; and (3) acquiescence or a willingness to proceed in the face of the danger. *Rule v. Jones* (1949), 256 Wis. 102, 108, 40 N. W. (2d) 580.

Appellants' final proposition is that Marie C. Prunty was not entitled to collect $3,000 for loss of wages.

The plaintiff testified: That she was regularly employed at the time of the accident by the Metal Mending Products, Inc., at a salary of $100 per week; that in full or partial weeks she was absent from her duties for a period of thirty weeks; that while her total net income following the accident did not diminish below what it had been previously, her income was made up of dividends and fees and commissions as well as salary; that at the time of the accident she was the owner of three and one-half shares of stock of the corporation; and that she was obliged to compensate others for special and additional services out of the actual salary she drew.

It is the prevailing doctrine in this country that where the salary of an injured person is continued by his employer during the time of his inability to perform services, such payment

is no ground for diminution of the damages to be paid by the one who has caused the injury. *Cunnien v. Superior Iron Works Co.* (1921), 175 Wis. 172, 188, 184 N. W. 767; *Campbell v. Sutliff* (1927), 193 Wis. 370, 374, 214 N. W. 374. There is nothing to take the instant case out of this general rule.

*By the Court.*—Judgments affirmed.