KINCANNON, Respondent, v. NATIONAL INDEMNITY COM-
PANY and others, Appellants.

*October 6—November 5, 1958.*

For the appellants there was a brief by *Arnold, Philipp & Murray* of Milwaukee, and oral argument by *Suel O. Arnold*.

For the respondent there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

WINGERT, J. We find no error, and therefore the judgment will be affirmed.

1. *Damages not excessive.* In considering whether the jury's appraisal of damages for pain, suffering, and disability is excessive, we must of course view the evidence in the light most favorable to plaintiff.

There was evidence from which the jury could reasonably believe that plaintiff suffered severe pain for a considerable period of time. Plaintiff testified that during the period he was at home after the accident he was in tremendous pain practically all over, was black and blue on both arms and one shoulder, felt as though his insides were torn apart, and had a headache—a kind of warped, twisted feeling just inside the head—"a distressing pressure sort of thing" like a person might have with a wedge driven between his teeth; and that at the time of trial he still had occasional sharp pains in his head, different from the migraine headaches he had had before the accident. His wife testified that while he was at home he had so much pain he was more comfortable in a reclining chair. Dr. Eisenberg, who saw plaintiff some 26 times after the accident, testified that he complained of intense headaches and pains in the front chest-wall area and

shoulder and buzzing in his head and difficulty in hearing; and that when Dr. Eisenberg discharged him the subjective complaints such as headaches continued, although the contusions and bruises were healed.

More serious than the ordinary sort of pain, however, were the emotional disturbances and personality change with respect to which there was substantial testimony.

Plaintiff testified that he could not hear as well, that his memory was not as good, that he had to take notes on everything that he was supposed to do, that he had not been able to do anything that took mental energy, and that about half an hour of good concentration was about all he could stand at one time. He also testified to irritability, dizziness, ringing in the ears, and difficulty in sleeping.

Supervisory employees at Evinrude Motors testified that it was hard for plaintiff to get along with the problems of design, that plaintiff seemed to be suffering from severe headaches which hurt production in the design element, that he had noticeable episodes of forgetfulness, that he "isn't as sharp as he used to be. His wit is slow," and that he had become nervous, irritable, and hard to get along with. Adequate medical testimony related these failings to the injuries received in the accident. Other witnesses testified that since the accident plaintiff's mind seemed to be dulled, he was less considerate, intolerant of other people's faults, had to be handled with kid gloves, was nervous, had episodes of forgetfulness, and was quarrelsome, all in marked contrast to his characteristics before the accident.

Dr. Schaeffer, a psychiatrist, testified that plaintiff had undergone a marked personality change, in the form of irritability, inability to concentrate, and feeling of loss of capacity to perform his normal activities, and that he was not able to do his work as well as before. In February, 1958, the condi-

tion was worse than previously, plaintiff showing much depression, with tears in his eyes and marked expression of hostility toward almost everybody. In the doctor's opinion the brain concussion produced the symptoms and because of the irritability and difficulty in concentration there developed an added emotional reaction in the form of hostility and depression which accentuated the disability. He considered the prognosis poor, since the symptoms had actually progressed at time of trial rather than being less severe. In his opinion there should be some improvement, but there would be some residuals in the form of headaches, dizziness, and personality changes, with feelings of hostility and difficulty in relationships with other people which are likely to remain with him for the rest of his life. He further testified that a cerebral concussion generally causes some difficulty in performing mental tasks as easily as before the accident, and a patient whose work consists of mental activity is bothered more by the residuals because there is increasing inability to concentrate and the feeling that he is not able to do his work as well as before; which may be very upsetting and lead to more symptoms.

It was within the province of the jury to believe this testimony. We cannot say that it was inherently incredible or was rendered incredible by other evidence. While medical witnesses testified that plaintiff's objective ailments resulting from the accident had been cleared up, the jury could reasonably believe that he had the symptoms described above. While classed as subjective, they may have been very real. Ailments of the mind and brain are real though intangible, and may cause as much suffering and disability as the so-called objective injuries that are more readily recognized, measured, and tested. To be sure, they are more easily simulated and deception may be more difficult to ex-

pose; but that does not mean that everybody asserting subjective symptoms in the absence of objective disorders must necessarily be treated as a malingerer. Here there was no medical testimony that plaintiff was faking, and sufficient medical testimony to warrant the jury in believing that plaintiff's condition was as above described and that it resulted from the injuries received in the accident.

We need not labor the point that the jury could properly infer from the evidence above summarized, that plaintiff underwent great mental suffering.

The jury could also find that plaintiff suffered substantial disability, in addition to the eight weeks' absence from work for which his loss of wages was stipulated at $1,600 as a separate item of the verdict not presently in question. The testimony of fellow employees, mentioned above, would support the inference that he was a much-less-valuable employee after the accident than before. In plaintiff's type of professional work, requiring thought, judgment, and ingenuity, such disabilities as dullness, slowness of wit, and inability to concentrate may be especially damaging. While plaintiff's employer had not reduced his salary of $800 per month, the jury could well believe that he would be unlikely to participate in future pay raises, and that the hazard of being discharged or receiving a cut in pay was greatly increased. The fact that the employer had been generous to date of trial does not negative an impairment in earning capacity. Earning capacity is related to capacity to do the work and earn the salary, and may be impaired materially although the employer generously continues to pay the old rate. *Prunty v. Vandenberg,* 257 Wis. 469, 480, 44 N. W. (2d) 246; *Olk v. Marquardt,* 203 Wis. 479, 486, 234 N. W. 723.

The jury was not bound to accept the suggestion that a satisfactory outcome of the pending litigation would remedy

the difficulty, nor did the evidence that plaintiff bought a new car and began driving it two or three weeks after the accident, and went out hunting with bow and arrow every week end, require the jury to discredit the testimony as to personality changes and the mental suffering and disability involved therein.

While the verdict is high, we cannot say that it is beyond the bounds of reason. In reaching that conclusion we give weight to the similar opinion of the learned trial judge, who saw the plaintiff and the witnesses and heard their testimony.

There is precedent in this court for sustaining a substantial verdict based largely on subjective symptoms. *Kearney v. Massman Construction Co.* 247 Wis. 56, 69, 18 N. W. (2d) 481, for example, was very much like the present case. There the plaintiff's skull was fractured. After it healed the medical witnesses could find no objective symptoms which should interfere with performance of ordinary labor, and were of opinion that plaintiff could or should be able to work; yet mainly on testimony of severe headaches, nervousness, irritability, difficulty in sleeping, impairment of memory, and attacks of dizziness, and that the injured man could not keep a job, could not stand noise, was afraid of crowds, had impaired memory, etc., a verdict of $15,000 was rendered and sustained. See also *Bethke v. Duwe,* 256 Wis. 378, 384, 41 N. W. (2d) 277. When those verdicts were rendered, the dollar had substantially greater purchasing power than at present.

*2. Instruction on future impairment of earning capacity.* At the trial twenty-one months after the accident, the court instructed the jury that if satisfied that plaintiff would for any appreciable period of time in the future suffer any physical disability, pain, suffering, or impairment of earning capacity as the result of his injuries, the jury might in-

clude damages for such future results in its answer to the question relative to damages for pain, suffering, and disability. No separate question was submitted as to future damages. Appellants contend that the instruction was erroneous for want of competent evidence of future disability, pain, suffering, or impairment of earning capacity. On motions after verdict, only that part of the instruction which authorized the jury to take into consideration future impairment of earning capacity was objected to. Therefore any objection to the propriety of the instruction in so far as relating to future physical disability, pain, and suffering was waived. *Grinley v. Eau Galle,* 274 Wis. 177, 180, 79 N. W. (2d) 797; *Wells v. Dairyland Mut. Ins. Co.* 274 Wis. 505, 518, 80 N. W. (2d) 380.

There was evidence on which the jury could find that plaintiff's future value to his employer was greatly diminished by his injuries. Some of it has been summarized above. A serious impairment of working efficiency would support a reasonable award of damages for impairment of earning capacity, even though plaintiff's earnings had not already been reduced. *Prunty v. Vandenberg,* 257 Wis. 469, 480, 44 N. W. (2d) 246; *Olk v. Marquardt,* 203 Wis. 479, 486, 234 N. W. 723.

While a mere possibility that disability will continue is not a proper element of damages, and it must appear by proofs that continued disability is reasonably certain to result from the injuries (*Kowalke v. Farmers Mut. Automobile Ins. Co.* 3 Wis. (2d) 389, 407, 88 N. W. (2d) 747), sufficient evidence is present in the case at bar to warrant the jury in making allowance for future impairment of earning capacity. Dr. Schaeffer testified that he considered the prognosis poor, that while there should be some improvement, there would be some residuals, with feelings of hostility and difficulty in relationships with other people which are

likely to remain with him the rest of his life. Even Dr. Millen, defendants' witness, went no further than to say that he thought the plaintiff's postconcussion syndrome reaction should clear up without any residuals in a matter of a few years, perhaps one or two or three years. Testimony little if any stronger was held sufficient in *Kowalke v. Farmers Mut. Automobile Ins. Co.* 3 Wis. (2d) 389, 407, 88 N. W. (2d) 747; *Graff v. Hartford Accident & Indemnity Co.* 258 Wis. 22, 44 N. W. (2d) 565.

3. *Instruction on depleted value of the dollar.* The jury was instructed that in determining the money value of plaintiff's damages "the present depleted value of a dollar and its lessened purchasing power" might be considered. At a time of rapid postwar inflation such an instruction was held proper. *Dabareiner v. Weisflog,* 253 Wis. 23, 29, 30, 33 N. W. (2d) 220. It has also been held proper to refuse a comparable instruction, after a period of rapid change in the value of the dollar has ended and its purchasing power has leveled off. *Rebholz v. Wettengel,* 211 Wis. 285, 292, 248 N. W. 109.

At the time of trial, the postwar period of rapid decline in the purchasing power of the dollar had been ended for some years, although the general price level was still rising slowly. Certainly everyone was keenly aware that the dollar would buy much less than a decade or more before.

In that situation we think the instruction complained of could serve no good purpose. On the other hand, we are unable to say that it was prejudicial, since it made only a bare reference to a condition that must have been well known to every member of the jury.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., and BROWN and CURRIE, JJ., took no part.