PETERSON, Respondent, v. WESTERN CASUALTY & SURETY COMPANY, Appellant.

*November 6—December 2, 1958.*

536

For the appellant there were briefs and oral argument by *Frank L. Morrow* of Eau Claire.

For the respondent there was a brief and oral argument by *Donald L. Farr* of Eau Claire.

FAIRCHILD, J. Defendant challenges the judgment on these grounds: (1) The award of damages was excessive; (2) plaintiff's counsel made allegedly improper statements upon argument to the jury and the trial court did not take adequate measures to protect defendant from resulting prejudice; (3) plaintiff's counsel discussed the defense interposed by defendant with defendant's insured before defendant's counsel had the opportunity to do so; (4) the court did not correctly submit to the jury the issue of whether plaintiff's injury was caused intentionally by the insured. We conclude that the evidence does not support the award of damages and that there must be a new trial. Because of our conclusions on the other claims, the new trial will be limited to the issue of damages.

1. *Damages*. Plaintiff was thrown to the pavement. When he picked himself up, he realized that his knees were hurt and his hands sore. He drove a squad car back to headquarters. He noticed a severe pain in his neck and it became stiff.

A doctor examined plaintiff and sent him to the hospital. Thereafter, Dr. Fuson treated him. Plaintiff was in the hospital four days at that time and then had a number of heat treatments at Dr. Fuson's office. He was in bed much of the time at home. Dr. Fuson sent him back to the hospital for ten days starting November 6th. The first diagnosis was a

sprained neck. X rays taken October 12th and November 6th were negative.

Plaintiff was forty-six years old and had been employed by the police department at Eau Claire since 1938. At the time of injury he was assistant chief, at a salary of $525 per month. He did not work in November; he worked thirteen and one-half days in December and sixteen days in January, none in February. On March 3, 1957, he retired from the force by reason of disability. On April 28th he went to work as timekeeper for a construction company and was still working in early October, 1957, at the time of trial. He earned $80 per week.

On January 11, 1957, Dr. Fuson referred plaintiff to a psychiatrist, Dr. Brousseau. Plaintiff testified that he experienced pain and headaches down to the time of trial; that there was a creaking or grating in his neck; that at times he had sharp pains in his neck to such an extent that he could not think properly; that he at times lost feeling in his fingers and feet. The doctors could not determine the reality of his sensations by observation or objective tests, except that when plaintiff bent his neck, muscle spasm could be felt.

Dr. Fuson testified that in his opinion plaintiff does have the sensations complained of and they are a result of his injury; that on March 3, 1957, the doctor felt that plaintiff was not in condition to continue his policework. His only testimony with respect to the future was: "I am unable to say whether there is a permanent injury."

Dr. Brousseau testified that in his opinion plaintiff was suffering from a psychoneurosis of a posttraumatic nature; that the condition is disabling as far as policework is concerned. "I am referring to the symptoms of pain and disability around his head and neck, headaches and as well as his marked nervous tension, irritability, and general being depressed and unhappy reaction." Dr. Brousseau's only testimony as to the future was:

"*Q.* Is there any way to tell—for you to tell, Dr. Brousseau, as to how long the present condition of posttraumatic neurosis will continue with the plaintiff? . . . *A.* I am a little confused in the question. There is no absolute way of saying how long this might last."

There was *no* testimony as to prognosis such as there was in *Kincannon v. National Indemnity Co.,* ante, p. 231, 92 N. W. (2d) 884.

We consider that the rule expressed in *Diemel v. Weirich* (1953), 264 Wis. 265, 268, 58 N. W. (2d) 651, with reference to allowance for the future continuation of pain where the injury is subjective in character, is applicable here, both to continuation of pain and other disagreeable sensations and continuation of the disability which results therefrom. "The members of juries also being laymen should not be permitted to speculate how long, in their opinion, they think such pain will continue in the future, and fix damages therefor accordingly. Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities (not mere possibilities), as to whether the pain will continue in the future, and, if so, for how long a period it will so continue."

We conclude that the jury's award of $16,250 was not supported by the evidence of impairment of earning capacity plus pain and suffering during the year which elapsed between the injury and the trial. Some unknown portion was based on speculation as to the future and we do not know whether the jury would have allocated as much as $9,500 (the amount of the judgment less the approximate medical and hospital expense) to the time before the trial.

Ordinarily, in reversing a judgment because the damages are excessive, we fix the lowest amount a jury would probably find and give plaintiff the option of accepting that amount or having a new trial. We see little use for that procedure here because more than two years have now elapsed

since the injury. Upon the new trial, plaintiff will be in a position to show the progress of his ailment since October, 1957, and the evidence will probably sustain a higher amount than would the present record.

2. *Argument of counsel.* We think it unnecessary to discuss defendant's objections to statements of plaintiff's counsel. Plaintiff was so clearly entitled to prevail on all the liability issues that if any of the statements complained of may have prejudiced the rights of defendant, such prejudice could only have affected the finding on damages.

3. *Allegedly improper contact of plaintiff's counsel with defendant's insured.* We confess our inability to appreciate defendant's claim in this regard. Hanson was not a defendant and there was no attorney-client relationship between Hanson and defendant's attorney. Defendant was asserting a policy defense of non-co-operation because Hanson was unavailable and another policy defense based on the claim that Hanson had intentionally caused plaintiff's injury. Plaintiff located Hanson and took him to plaintiff's attorney. Plaintiff's attorney informed Hanson of the defenses being raised and advised him to get in touch with defendant's counsel. Upon argument to the jury, defendant's counsel conceded that the jury should answer "No" to the question on failure to co-operate. The jury did so.

4. *The policy defense of intentional injury.* The policy provided that it did not apply "to injury . . . caused intentionally by . . . the insured." The special verdict included the question: "Did James L. Hanson intentionally injure Bernard C. Peterson?" Defendant had requested the question: "Did James Hanson intentionally move his car backwards at a time when he knew that the plaintiff was in such position, in or near the car, that contact with the plaintiff would result?"

Upon argument to the jury, defendant's counsel stated his position on this issue as follows:

"I am not going to tell you that James Hanson for one moment deliberately and intentionally propelled his car against Mr. Peterson for the purpose of injuring him. Never —never did he do any such thing like that! He only deliberately and intentionally backed his automobile so as to escape arrest but in the process he knew that Peterson was partially in the automobile."

As the trial judge suggested, Hanson was probably guilty of gross negligence with respect to Peterson and defendant's claim was that injury caused by gross negligence was the same as injury intentionally caused. The law may treat gross negligence as equivalent to intentional wrongdoing for some purposes, but not for the purpose of excluding liability for gross negligence from the coverage of a liability insurance policy. *Sheehan v. Goriansky* (1947), 321 Mass. 200, 204, 72 N. E. (2d) 538, 541, 173 A. L. R. 497; *New Amsterdam Casualty Co. v. Jones* (6th cir. 1943), 135 Fed. (2d) 191, 194.

The question submitted by the court correctly stated the issue, and the question requested by defendant did not. In view of the evidence and the position stated to the jury by defendant's counsel, the question could only be answered "No."

*By the Court.*—Judgment reversed, cause remanded for a new trial on the issue of damages only. Costs in this court are to abide the event of the new trial. If plaintiff then be awarded damages of $10,000 or more, he is to be awarded costs on this appeal as well as in circuit court (including disbursements on both trials). Otherwise defendant is to be awarded costs on this appeal and plaintiff's costs limited to one trial.

BROWN, J., took no part.