155 So.2d 557 (1963)
TAMPA TRANSIT LINES, INC., and Wesley Cain Floyd, Appellants,
v.
George SMITH, Jr., Appellee.
No. 3888.
District Court of Appeal of Florida. Second District.
August 2, 1963.
W.B. Dickenson, Jr., of Hill, Hill & Dickenson, Tampa, for appellants.
Benjamin Sidwell, of Sidwell & Cheatwood, Tampa, for appellee.
WHITE, Judge.
Defendants Tampa Transit Lines, Inc. and Wesley Cain Floyd appeal a final judgment following an adverse verdict and *558 denial of new trial in a personal injury action.
The plaintiff, a 36 year old Negro laborer, was the driver of an automobile which was struck in the rear by a bus owned by the defendant corporation and driven by defendant Wesley Floyd. The defendants on appeal do not deny liability but contend that the $12,000.00 award was excessive. They submit that in order to arrive at that figure the jury must have found the plaintiff permanently disabled and that, in so finding, the jury had before it medical opinion which was inadmissible and prejudicial to the defendants.
The plaintiff submits that there was no error in admitting the opinion testimony, that even though such testimony as to permanence of disability may not have been conclusive, it was competent evidence and could not vitiate the verdict, and that in any event the verdict was not dependent upon a finding that the plaintiff's disability was permanent.
The defendants protest the opinion testimony of Dr. Richard J. Miller, an orthopedic specialist, on the theory that the witness was an examining physician and not a treating physician. Dr. Miller, however, was not contacted for the purpose of qualifying him as a witness. The plaintiff was treated initially by Dr. P.L. Sheehy, a general medical practitioner. During October and November, 1961, following plaintiff's injury, Dr. Sheehy treated him almost daily for cervical strain. Dissatisfied with plaintiff's progress after five weeks of treatment, Dr. Sheehy requested consultation and referred him to Dr. Miller.
Dr. Miller's examination, according to his deposition three weeks before the trial, disclosed a marked restriction of motion in the cervical area of plaintiff's neck in approximately 30 per cent flexion and 50 per cent rotation and lateral bending. The doctor noted definite tenderness and spasm on the left side of plaintiff's neck, in the posterior spinus muscles in the rear of the neck and in the muscle below the ear to the breastbone. X-rays of the cervical spine revealed a straightening of the cervical lordosis and angulation at the fifth and sixth cervical interspace, indicating severe cervical strain. Dr. Miller recommended that plaintiff continue to wear his plastic collar, continue with physiotherapy and refrain from heavy work. The plaintiff was referred back to Dr. Sheehy who treated him eight times in December, 1961, twice in January and once in April and in August, 1962  about three months before the trial.
Dr. Miller also testified that when he examined the plaintiff, which was about five weeks after the accident, he felt that the symptoms would clear up in four to six weeks with additional treatment. He was asked the question, assuming that plaintiff's neck was still bothering him at the time of trial more than one year after the injury, did the doctor have an opinion based on reasonable medical certainty as to whether or not the condition had become permanent. He replied that in his opinion, based on reasonable medical certainty, the pain would be considered as permanent. In this connection the defendants contend that the doctor's opinion was inadmissible for the further reason that it was based upon the invalid hypothesis of plaintiff's self-serving statement, unsupported by expert testimony, that at the time of trial he was still suffering pain and could not fully perform his chores. In support of this contention the defendants cite authorities hereafter discussed.
Medical science acknowledges that there are instances where so-called "whiplash" type of injury does not readily lend itself to definite prognosis grounded on purely objective findings. We think that Dr. Miller's opinion as to the probable life duration of plaintiff's condition was admissible insofar as it related to pain, even though it was based largely on subjective symptoms attested by the plaintiff as of the time of trial. Dr. Miller was technically a treating physician. See Marshall v. Papineau, Fla.App. 1961, 132 So.2d 786. Obviously the doctor's opinion was qualified by *559 the hypothetical factor, by the interval between his examination and the date of trial and by the fact that it differed from his first impression; but these qualifications pertained to the weight of his testimony rather than its admissibility. It could have been believed or disbelieved, as could also the testimony of the plaintiff.
The plaintiff submits that the amount of the verdict is justified without reference to damages for future disability. We shall briefly appraise the verdict in that perspective by assuming, for discussion purposes, that the jury could not delve appreciably into future damages. There remain other elements of damages including past expenses, loss of wages, past pain and suffering and inability to lead a normal life. Does the verdict so clearly exceed any reasonable evaluation of these elements as to shock the conscience? Our negative answer does not, of course, imply that had we been the jury our verdict would have been in like amount.
The plaintiff's medical expenses and loss of wages to date of trial were shown to aggregate close to $4,000.00 or roughly one-third the damages awarded. The plaintiff was not hospitalized, but there was substantial evidence of pain and inability to lead a normal life during the more than thirteen months between the date of injury and time of trial. The evidence strongly indicated that the plaintiff was not a malingerer. It would seem that the jury, without being shockingly unreasonable, could have allocated the remainder of the award to these established elements of damages. It is again noted, however, that the discounting of future damages has been only for the purposes of this discussion and is not intended as implying that consideration of future disability was foreclosed by incompetent testimony.
The excellent briefs disclose that the defendants' strongest argument stems from two Wisconsin cases in which it was stated that where continuance of disability is sought to be established by plaintiff's subjective symptoms at the time of trial, the court may not instruct on permanency of disability in the absence of corroborative expert testimony. See Diemel v. Weirich, 1953, 264 Wis. 265, 58 N.W.2d 651; Peterson v. Western Casualty & Surety Co., 1958, 5 Wis.2d 535, 93 N.W.2d 433. These cases lend color to the defendants' contention. In the Diemel case, however, no medical witnesses testified at all in behalf of the plaintiff, and in the Peterson case the only expert testimony with respect to future damages was "`I am unable to say whether there is a permanent injury.'"
It is notable that in this same Wisconsin jurisdiction the courts have sustained verdicts based largely on subjective symptoms. In Kearney v. Massman Construction Co., 1945, 247 Wis. 56, 18 N.W.2d 481, medical witnesses could find no objective symptoms which should interfere with the future performance of plaintiff's duties. The court nevertheless refused to set aside a $15,000.00 verdict based mainly on testimony of headaches, nervousness, irritability, difficulty in sleeping and inability to keep a job. In Kincannon v. National Indemnity Co., 1958, 5 Wis.2d 231, 92 N.W.2d 884, it was held that a verdict of $17,500.00 was not excessive where testimony of fellow employees indicated serious impairment of plaintiff's working efficiency, with no medical testimony that the plaintiff was a malingerer.
The Circuit Court of Appeals for the District of Columbia has held that testimony that plaintiff could not do heavy lifting, and was unable to do his former work almost two years after infliction of his injury, was sufficient to take the case to the jury without affirmative medical testimony as to permanence of disability. See Alamo v. Del Rosario, CCA 1938, 69 App.D.C. 47, 98 F.2d 328. The Court there observed that:
"* * * Cases in other jurisdictions also have permitted an inference of permanence to be drawn, without expert prognosis, from the nature of the *560 injury and its continuance to the time of the trial, and this although the injury is not visible or tangible. * * *"
Similarly in Trani v. Anchor Hocking Glass Corp., 1955, 142 Conn. 541, 116 A.2d 167, it was held that where the plaintiff testified that her hand still ached at the time of trial four years after the accident, the jury could consider that the disability would continue in the future although no expert witness testified to that effect.
There is an apparent dearth of Florida case law directly on this point, but in a workmen's compensation case it has been held that the testimony of the employee as to his disability was sufficient to uphold the award even though an expert medical witness testified to the contrary. See Star Fruit Co. v. Canady, 1947, 159 Fla. 488, 32 So.2d 2. The opinion states 32 So.2d at page 4:
"* * * The Circuit Judge had a right, as a matter of law, to accept the opinion of the Tampa physician on this point or to reject it and base his conclusions on the testimony of the claimant Canady. We have held that the findings of fact on conflicting testimony in the court below will usually be sustained if supported by substantial evidence."
Reverting once more to the immediate situation, the plaintiff testified that he continued to have difficulty with pain, headaches and a "catching" in his neck; that he had attempted light work until he had a setback when his shoulder went dead when he reached up for a clipboard. The plaintiff had not worked from August 23, 1962, until the trial in November of that year. He had no training for office work since his occupation had always involved physical labor. His employer testified that the plaintiff had been with his company for nine years and was a good worker whose duties required sound physical condition; that the plaintiff had difficulty even with light work after his accident; and that this light work mvolved bending, stooping, reaching and packing light articles requiring use of the upper trunk.
The question of whether a personal injury verdict is excessive or inadequate is not to be lightly regarded from any point of view. The defendants should not be unjustly mulcted in damages and the plaintiff should not be denied full compensation when he is so entitled; but neither should the jury award be denied due respect. See e.g. Re-Mark Chemical Co. v. Ross, Fla. App. 1958, 101 So.2d 163; Schnedl v. Rich, Fla.App. 1962, 137 So.2d 1, 3.
The guides and rules governing appellate review of verdicts have been outlined many times. See e.g. Goldstein v. Walters, Fla.App. 1961, 126 So.2d 759, 761; Aylesworth v. London, Fla.App. 1960, 119 So.2d 816, 818; Little River Bank and Trust Co. v. Magoffin, Fla. 1958, 100 So.2d 626; Sproule v. Nelson, Fla. 1955, 81 So.2d 478, 481, 76 A.L.R.2d 1066; Loftin v. Wilson, Fla. 1953, 67 So.2d 185, 9 Fla.Jur. Damages §§ 96, 97. These and other decisions point up the proposition that a verdict will not be disturbed in the absence of harmful trial error or unless it clearly appears that the jury acted arbitrarily or labored under misapprehension or prejudice resulting in a verdict which, viewed in the light most favorable to the party for whom rendered, is shockingly excessive or inadequate.
These questions must of course be raised in the trial court on motion for new trial precedent to appellate review, so the question here is whether or not the trial court abused its discretion in ruling on the motion. See Guarria v. State Road Department of Florida, Fla.App. 1960, 117 So.2d 5; Freeman v. Bandlow, Fla.App. 1962, 143 So.2d 547, 549; Morin v. Halpern, Fla. App. 1962, 139 So.2d 495. There appears no such abuse of discretion.
Affirmed.
SMITH, C.J., and SHANNON, J., concur.