DAVID R. ROBINSON, Plaintiff-Appellee, *v.* GREELEY AND HANSEN, a Partnership, Defendant and Counterplaintiff-Appellant.—(E & D Robinson Construction, Inc., Counterdefendant-Appellee.)

Second District No. 82—435

Opinion filed May 11, 1983.

Julian Johnson, of Snyder, Clarke, Dalziel & Johnson, of Waukegan, for appellant.

Donald T. Morrison & Associates and Paul S. Chervin, Ltd., both of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

This case is before us for the second time.

The plaintiff, David R. Robinson, brought this action under the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*) against defendant, Greeley and Hansen (Greeley), a partnership, to recover damages for injuries (including brain damage) sustained by plaintiff on March 30, 1973, when he fell from an iron ladder affixed to the wall of a concrete sewer lift station being constructed for the North Shore Sanitary District (District). Defendant, which was the engineering firm employed by the District to design the system and supervise its construction, brought a third-party action for indemnity against plaintiff's employer, E & D Robinson Construction, Inc. (E & D), the general contractor for this project. The first trial resulted in a jury verdict and judgment in favor of the plaintiff in the amount of $325,000. However, we reversed the judgment and remanded for a new trial on the ground that plaintiff failed to plead and prove defendant was "in charge of the work," as required by the Act. (Ill. Rev. Stat. 1973, ch. 48, par. 69; *Robinson v. Greeley & Hansen* (1980), 86 Ill. App. 3d 1082, 408 N.E.2d 723.) This defect was cured upon remand and, after a new trial by jury, judgment was again entered in favor of the plaintiff in the principal action, this time in the amount of $750,000. In the third-party action the jury found in favor of third-party defendant E & D as to Greeley's claim for indemnity, finding that Greeley was in charge of the work and was not free from major fault. Greeley appeals from both judgments.

Greeley first contends the trial court erred when it refused to allow defendant to inform the jury that plaintiff had a remedy against his employer, E & D, under the Workmen's Compensation Act. (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) Defendant claims the jury's lack of knowledge on this point resulted in an improper inference that plaintiff's only opportunity for compensation was against defendant. Greeley further maintains such an inference was exploited by plaintiff's counsel's argument to the jury that plaintiff "only [has] one chance for the compensation for the rest of his 39 years of life expectancy."

It is generally held that direct or indirect references to Industrial Commission proceedings in the trial of third-party actions are improper and should be excluded. (*Principato v. Rudd* (1981), 102 Ill. App. 3d 362, 366, 430 N.E.2d 63; *Chamness v. Odum* (1979), 80 Ill.

App. 3d 98, 100, 399 N.E.2d 238.) This is especially true with respect to references regarding the amount of payments made by the employer under the Workmen's Compensation Act. (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.; Pierce v. Commonwealth Edison Co.* (1981), 101 Ill. App. 3d 272, 276, 428 N.E.2d 174; *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1088, 401 N.E.2d 1145.) The general rule has been relaxed, however, in order to show a witness' bias or financial interest in the litigation. (*Principato; Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, 70-71, 264 N.E.2d 170.) Under this circumstance, it is proper to comment upon the existence of this potential recovery, but not the amount of it. *Principato; Sweeney.*

██ In the instant case, defendant was not seeking to establish the financial interest of plaintiff's witnesses. It was seeking only to apprise the jury that plaintiff had a remedy against his employer under the Workmen's Compensation Act and that the action against Greeley was not his only opportunity for compensation. We view the injection of this information as highly prejudicial to plaintiff because it could have the effect of decreasing the jury's award solely because plaintiff had another source of compensation. (See *Pierce v. Commonwealth Edison Co.* (1981), 101 Ill. App. 3d 272, 276, 428 N.E.2d 174; *Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 568, 190 N.E.2d 315.) We further view this information as irrelevant to the issue which was before the jury, *i.e.*, whether defendant was liable under the Structural Work Act. (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*) Finally, we do not consider improper plaintiff's argument to the jury that this was his "one chance for the compensation." Although plaintiff also had a remedy against E & D under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*), the policy behind that act is not to provide compensation for injury but rather "to afford employees financial protection when their earning power is temporarily diminished or terminated due to employment injuries." (*Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 446, 359 N.E.2d 125.) We, therefore, find no error in the trial court's refusal to allow defendant to comment upon plaintiff's remedy under the Workmen's Compensation Act.

██ Defendant's next contention is that the trial court erred in failing to submit an itemized verdict form to the jury. It relies upon section 65.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 65.1) as authority for its position. We question the applicability of this statute to the instant case, since the statute was not in effect when the present action was originally filed. (See Ill. Rev. Stat. 1979, ch. 110, par. 65.1, effective September 19, 1976.) In any event,

defendant has waived this issue by failing to object to the form of the verdict which was submitted to the jury, and by failing to tender an itemized verdict itself. *Biundo v. Christ Community Hospital* (1982), 104 Ill. App. 3d 670, 674, 432 N.E.2d 1293; *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 932, 419 N.E.2d 578.

■■ ■ Defendant next contends it was error to instruct the jury as to "present cash value" of future damages without actuarial evidence on the formula to be used in arriving at this amount. It claims this is tantamount to giving an instruction which is not based on the evidence. We disagree. There is no requirement in Illinois that actuarial or statistical evidence be presented to guide the jury in its determination of present cash value. (*Crabtree v. St. Louis-San Francisco Ry. Co.* (1980), 89 Ill. App. 3d 35, 39, 411 N.E.2d 19; *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 29, 339 N.E.2d 381; *Wells v. Web Machinery Co.* (1974), 20 Ill. App. 3d 545, 559-60, 315 N.E.2d 301.) The jury was instructed that it must compute present cash value and was given the definition of that term. (Illinois Pattern Jury Instruction (IPI), Civil, No. 34.02 (2d ed. 1971).) The formula for calculating present cash value is, in our opinion, implicit in the definition. (See *Kirk v. Walter E. Deuchler Associates, Inc.* (1979), 79 Ill. App. 3d 416, 398 N.E.2d 603.) We note that defendant has not contested the correctness of the instruction or the definition contained in it. Defendant also does not claim the jury improperly computed present cash value. (*Cf. Carlson v. Dorsey Trailers, Inc.* (1977), 50 Ill. App. 3d 748, 756, 365 N.E.2d 1065.) Further, we note that defendant failed to submit another formula which it believed better explained the method of arriving at this figure. (*Pennell v. Baltimore & Ohio Ry. Co.* (1957), 13 Ill. App. 2d 433, 440, 142 N.E.2d 497.) The burden was on defendant to do so if it felt the formula in IPI Civil No. 34.02 needed supplementing or clarifying. (*Pennell.*) We think the jury was adequately informed on how to arrive at present cash value. In addition, any confusion in how to apply the instruction was adequately clarified by plaintiff's counsel's extensive comments during closing argument on the factors to be considered in computing this figure. We conclude that while an actuary's testimony may be helpful to a jury charged with calculating present cash value, it is not necessary or required before an instruction on this subject may be submitted.

Defendant next claims that evidence of plaintiff's present earnings from David Robinson Construction Company, of which plaintiff is the sole shareholder, should have been admitted into evidence on the issue of lost earning capacity. Plaintiff, however, contends that these

earnings were not admissible because they represented income resulting from the combination of capital and labor and were therefore not indicative of his earning capacity. We agree.

■■■ Impairment of earning capacity is a proper element of damages to be considered by the trier of fact. (*Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14.) Recovery, however, must be limited to such loss as is reasonably certain to occur. (*Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920.) Generally, the measure of damages for impairment of earning capacity is the difference between the amount which plaintiff was capable of earning before his injury and that which he is capable of earning thereafter. (See generally 25 C.J.S. *Damages* sec. 87, at 951 (1966).) Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury, and the difference in the actual earnings of plaintiff before and after the injury does not constitute the measure. (*Buckler*; 25 C.J.S. *Damages* sec. 87, at 952-53 (1966).) The fact that plaintiff's earnings after his injury are at the same or greater rate than before is not a criterion as to earning power, since earning capacity may be materially impaired although the employer continues to pay the old rate. (*DeWall v. Prentice* (Iowa 1974), 224 N.W.2d 428; *Vess v. Gardner* (5th Cir. 1969), 413 F.2d 424; *Anthes v. Anthes* (1965), 258 Iowa 260, 270, 139 N.W.2d 201, 208; *Rice v. Philadelphia Transportation Co.* (1959), 394 Pa. 454, 147 A.2d 627; *Kincannon v. National Indemnity Co.* (1958), 5 Wis. 2d 231, 92 N.W.2d 884.) Nevertheless, earnings before and after the injury may be helpful to a jury in its determination of the impairment of ability to earn. 25 C.J.S. *Damages* sec. 87, at 962-63 (1966); *Anthes; Boodry v. Byrne* (1964), 22 Wis. 2d 585, 126 N.W.2d 503; *Smith v. Corsat* (1963), 260 N.C. 92, 131 S.E.2d 894.

■■ Where the injured person is self-employed, the problem of determining lost earning capacity is more complicated. Generally, earnings which are derived from the combination of capital and labor should not be considered in determining the diminution of earning capacity. (25 C.J.S. *Damages* sec. 87, at 955 (1966).) However, it has also been held that a jury may properly consider the profits which have been derived from plaintiff's management of or activity in a business, as distinguished from profits derived from invested capital. (*Bell v. Yellow Cab Co.* (1960), 399 Pa. 332, 160 A.2d 437; *Hetler v. Holtrop* (1938), 285 Mich. 570, 281 N.W. 434.) Corpus Juris Secundum described the circumstances under which income derived from a business may be considered in determining lost earning capacity:

"Where the predominating factor is the directing intellectual and physical labor of the individual, such business may be characterized as personal, and income therefrom may be regarded as earnings, even though others with tools and equipment may aid in the work, as the personal feature prevails over the investment of insignificant capital and the labor of others." 25 C.J.S. *Damages* sec. 87, at 956 (1966).

 Applying the foregoing principles to the present case, we think the trial court was correct in excluding evidence of plaintiff's present earnings. On the basis of the record before us, we cannot characterize plaintiff's wrecking business, which was formed after the dissolution of E & D and of which plaintiff is the sole shareholder, as predominantly personal. The record indicates that following the dissolution of E & D, the assets of that company were merely transferred to the wrecking company. Machinery that would be useful in the wrecking industry was given to plaintiff for use in his new business. These investments are clearly unrelated to plaintiff's earning capacity after his injury. The record is also clear that while plaintiff operates a bulldozer and backhoe in the business, he also employs others to perform critical functions of the business. We conclude that on the basis of this record the predominating factor of plaintiff's wrecking company is the investment of significant capital, as well as the use of the labor of others in performing critical functions. Under these circumstances, we do not view plaintiff's corporate income as an accurate indicator of his earning potential.

 Defendant also claims that the testimony of William Schweihs, a vocational rehabilitation counselor, regarding plaintiff's lost earning capacity was too speculative to be admitted into evidence. We disagree. Mr. Schweihs testified that prior to the accident plaintiff was capable of earning $50,000 per year. This conclusion was based upon an evaluation of plaintiff's skills and duties in the construction industry prior to the accident. Mr. Schweihs also testified that plaintiff's earning capacity after the injury was only $10,000. In reaching this conclusion, Mr. Schweihs considered plaintiff's employability in the wrecking industry, in which he was currently employed, and clerical and machine-tending occupations, as well as periods of unemployment which might occur in those occupations. Thus, plaintiff's current earning capacity was determined by his current position, duties and skills. (*Cf. Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920.) We note that defendant had ample opportunity to cross-examine both Mr. Schweihs and plaintiff regarding plaintiff's administrative capabilities prior to

and after the accident. We see no reason to reverse on this basis.

Defendant's next contention is that the court erred in striking the testimony of Kenneth Dumas, a safety engineer, on the ground that he was not sufficiently qualified to render an expert opinion on the use of a ladder in the lift station.

The trial judge has broad discretion in determining whether a witness has been qualified as an expert. (*Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 362, 438 N.E.2d 1217; *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 256, 417 N.E.2d 154.) To lay a proper foundation for expert evidence, the expert must be shown to have that special knowledge or experience in the area about which he expresses his opinion. (*Crabtree v. St. Louis-San Francisco Ry. Co.* (1980), 89 Ill. App. 3d 35, 38, 411 N.E.2d 19.) A witness whose knowledge is based upon practical experience is no less an expert than one who possesses particular academic or scientific knowledge, and their respective effect on triers of fact is one of degree only; there is insufficient basis for a distinction between them, and it is for the jury to determine the weight to be given their testimony. *Brendel v. Hustava* (1981), 97 Ill. App. 3d 792, 799, 423 N.E.2d 503.

In the present case, the testimony of Kenneth Dumas was offered for his opinion that a ladder should have been used for ingress and egress from the lift station. Mr. Dumas testified that he was employed as senior safety engineer for Kenny Construction Company, which was engaged in the deep tunnel project in Chicago as well as other forms of heavy construction. He held this position for approximately five months at the time of trial. Prior to this, Mr. Dumas was a safety engineer for Kenny Construction Company for six years, and prior to that he was a field engineer and part-time safety man. He had approximately two years of college, but did not possess a degree. All Mr. Dumas' training as a safety engineer was therefore obtained through practical experience. Although most of his work experience was obtained through the construction of tunnels and sewers, he was also involved in the construction of numerous underground structures which he testified were similar in many respects to the lift station involved here. This included the installation of manholes into concrete foundations with rungs imbedded into the concrete walls for ingress and egress. Mr. Dumas also attended several safety seminars at the University of Wisconsin, and classes on the Occupational Safety and Health Administration. Mr. Dumas had never previously rendered an opinion in a case concerning a ladder. In preparing his opinion on the safety of the lift station, the witness did not consult any books, texts,

or papers on the subject matter of the lawsuit, but relied solely upon the written plans and specifications for the lift station.

 ■■ On the basis of this record, we think Mr. Dumas was qualified to render an opinion on the safety of the method used for ingress and egress from the lift station. We do not, however, believe that the striking of his testimony in this case requires reversal. Mr. Dumas' original opinion was based upon the written drawings of the lift station and not upon the station as it was actually constructed. He was, therefore, unfamiliar with the actual layout of the station and his testimony reflected this lack of information. Further, three other defense witnesses testified that a temporary, rather than fixed, ladder should have been used. Although two of these witnesses were associated with Greeley, one was a highly qualified and disinterested witness. We therefore conclude that Mr. Dumas' testimony was cumulative in nature and no reversible error resulted in striking it from the record. *Estate of Whittington v. Emdeko National Housewares, Inc.* (1981), 96 Ill. App. 3d 1007, 1011, 422 N.E.2d 26.

 ■■ Defendant next argues the trial court erroneously refused its tendered instruction No. 13 on the ground that it was repetitious and placed undue emphasis on defendant's theory of the case. The instruction set forth defendant counterplaintiff's right to indemnity from E & D on any one of three grounds. The first paragraph alleged a failure of E & D to comply with the temporary structures provision of the specifications. This provision was sent to the jury room along with the instructions and stated, among other things, that E & D had the responsibility to furnish "[a]ll *** ladders *** which may be needed in the construction of any part of the work ***." Paragraph three of defendant's tendered instruction alleged E & D's "failure to provide a portable ladder."

Instruction of the jury should be accomplished by a summary of the pleadings, concisely stated without repetition and without undue emphasis. (*Hammonds v. Inland Tugs Co.* (1979), 75 Ill. App. 3d 377, 380, 393 N.E.2d 1328; *Herbolsheimer v. Herbolsheimer* (1977), 46 Ill. App. 3d 563, 568, 361 N.E.2d 134; *Signa v. Alluri* (1953), 351 Ill. App. 11, 20, 113 N.E.2d 475.) It has been held that "explaining the ways in which [an] issue could be proven as part of the issues instruction gives undue emphasis to the plaintiff['s] theory." (46 Ill. App. 3d 563, 568, 361 N.E.2d 134, 138.) It is clear that paragraph three of defendant's tendered instruction merely repeated the allegation in paragraph one. The instruction was, therefore, properly refused. Counterdefendant's instruction No. 2, which was given, contained the same material as defendant's No. 13 without the repetition. Thus, the

jury was instructed as to defendant's theory of the case, and still found that it was not free from major fault. Under these circumstances, no prejudice has resulted to defendant because of the refusal of defendant's tendered instruction. (*Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 227, 419 N.E.2d 1253; *McManus v. Feist* (1966), 76 Ill. App. 2d 99, 108, 221 N.E.2d 418.) Where no prejudice is shown the refusal to give a requested instruction cannot be deemed reversible error. *Kent.*

Next defendant contends it was improperly denied the right to ask Ervin Robinson, president of E & D and plaintiff's father, whether he had an opinion prior to the accident that the entrance to the lift station was dangerous. The court sustained plaintiff's objection to the question on the ground that Mr. Robinson was not qualified as an expert and that the question was one for the jury. Although the record may have supported a finding that Mr. Robinson was an expert, we note he was not called to the stand in that capacity by the defendant.

Under ordinary circumstances, an opinion or conclusion of a nonexpert witness may not be admitted into evidence, and his testimony must be confined to a report of the facts. (*Law v. Central Illinois Public Service Co.* (1980), 86 Ill. App. 3d 701, 705, 408 N.E.2d 74; *State Farm Mutual Automobile Insurance Co. v. Short* (1970), 125 Ill. App. 2d 97, 103, 260 N.E.2d 415.) Further, while an expert witness may express an opinion on an ultimate fact in the case, a nonexpert witness may not. *LaSalle National Bank v. First City Corp.* (1978), 58 Ill. App. 3d 575, 577, 374 N.E.2d 913; *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809.

In the present case, the jury was required to decide whether the defendant had wilfully violated the Structural Work Act. Under the Act, a wilful violation occurs when one knows of or when, in the exercise of reasonable care, one could have discovered, the dangerous condition. (*Peoples v. Granite City Steel Co.* (1982), 109 Ill. App. 3d 265, 270, 440 N.E.2d 363; *Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 528, 418 N.E.2d 822.) Thus, the question of the dangerousness of the entrance to the lift station was an ultimate fact for the jury to decide. Mr. Robinson was not qualified to render an opinion on such facts and, therefore, the objection to the question was properly sustained.

Defendant-counterplaintiff next argues that the trial court improperly entered judgment in favor of counterdefendant E & D on count III of its indemnity complaint. Defendant claims that count III

asserted its right to indemnity based upon E & D's failure to provide insurance as required by its contract with North Shore Sanitary District. We have examined count III of defendant's counterclaim and find no allegation of E & D's failure to provide insurance. In fact, the record belies such a contention, since the insurance policy itself was attached to one of plaintiff's pleadings. (*Cf. Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189.) Further, the record is clear that no real issue of E & D's failure to obtain insurance was ever developed by defendant-counterplaintiff, nor was the jury ever instructed on this issue. It is apparent that Greeley is here seeking to have E & D declared the insurer of its own wilful violation of the Structural Work Act. Such a result is forbidden under Illinois law as against public policy. (Ill. Rev. Stat. 1973, ch. 29, par. 61; *Singleton v. County of Cook* (1977), 53 Ill. App. 3d 994, 369 N.E.2d 227; *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881.) Accordingly, the trial court did not err in entering judgment in counterdefendant's favor on count III of the defendant-counterplaintiff's third-party complaint.

Finally, defendant contends that the plaintiff and counterdefendant should have been required to pay the total expenses incurred by its out-of-State expert witness, Robert Bald, who was deposed in Illinois at plaintiff's and counterdefendant's request.

The trial court has wide pretrial discovery discretion so that its orders concerning discovery will not be modified absent an affirmative showing of abuse which an appellant must clearly show. (73 Ill. 2d R. 201(c)(2); *Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 233, 443 N.E.2d 1125.) In the instant case, Mr. Bald's deposition with plaintiff and counterdefendant lasted for one day, and the other day of his two-day trip was unexplained in the record and presumably was spent with defendant's attorney. The trial court determined that of the $1,307.78 in expenses incurred by Mr. Bald, only $527.78 of this amount was in relation to the deposition conducted by plaintiff and counterdefendant. We have examined the record and find no abuse of discretion in this regard.

In accordance with the foregoing, the judgment of the circuit court of Lake County is affirmed in all respects.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.