BEVERLY PIERCE, Plaintiff-Appellee and Cross-Appellant, *v.* COMMONWEALTH EDISON COMPANY, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee.—(GUY ATKINSON COMPANY, Indiv. and d/b/a Walsh Construction Company Division, Third-Party Defendant-Appellee.)

Third District    No. 80-671

Opinion filed October 20, 1981.—Rehearing denied December 14, 1981.

Abigail K. Spreyer, Jerome H. Torshen, Aaron M. Spiezer, and Janet F. Gerske, all of Jerome H. Torshen, Ltd., and Garretson & Santora, both of Chicago, for appellant Commonwealth Edison Company.

Rex K. Linder and Gary D. Nelson, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Guy Atkinson Company.

John F. Vickers, of Peter F. Ferracuti & Associates, of Ottawa, for appellee Beverly Pierce.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

These appeals arise from a jury trial held in the La Salle County Circuit Court. The plaintiff, Beverly Pierce, sought compensation for personal injuries she suffered, while the defendant, Commonwealth Edison Company, sought indemnity from the third-party defendant, Walsh Construction Company. The jury determined that Commonwealth Edison was liable to Pierce, but was not entitled to indemnity from Walsh. It appeals both of those decisions, while the plaintiff, Pierce, cross-appeals on a separate issue.

Commonwealth Edison began building a nuclear power plant in

La Salle County in 1972. One of the contractors on the construction project was Walsh Construction. It served as the structural and super-structural contractor. The building project was bid on a cost plus fixed-fee basis because of the rapidly changing technology in the nuclear energy industry. To reimburse Walsh and other contractors for the cost of equipment used on the job site, Edison used one of two methods. For one such method, the contractor was paid a rental rate for the appraised value of the equipment. With the alternative method, Edison would reimburse the contractor for the purchase price of the equipment with the agreement that the equipment would be conveyed to Edison upon the completion of the construction.

As a part of Walsh's contract, it agreed to provide a first-aid station at the job site. In 1974, as a result of a request by the union workers employed at the site, it was determined that an emergency vehicle was required in conjunction with the first aid station. After consultation with Edison's project manager, Leo Burke, a 1968 Dodge van was purchased by Walsh and adapted for use as an ambulance. Instead of paying the cost of the ambulance through monthly rental payments, Edison opted to reimburse Walsh for the purchase price of the van.

The plaintiff was employed by Walsh as a nurse in the first aid station. On February 10, 1976, a carpenter on the job site was injured and brought to the first aid station where plaintiff was on duty. While transporting the injured carpenter to the Ottawa Community Hospital in the converted Dodge van, and while making a sharp u-turn, the side doors in the rear portion of the van came open. The plaintiff, who was administering oxygen to the injured worker with her hand, reached across her patient and with her left hand held the door shut for the remainder of the trip to the hospital. As she moved to grasp the errant door, the plaintiff felt a sharp pain in her back. Plaintiff contends that her pain was the symptom of an injury that led to her suffering from degenerative disc disease, prompting surgery for a laminectomy in 1976 and again in 1977. Late in the year following the second surgery, the plaintiff filed the previously referenced action against Edison. In her complaint filed with the La Salle County Circuit Court, Pierce alleged that Edison was negligent in failing to provide a safe and suitable ambulance for emergency use at the first aid station. In its answer, Edison alleged that plaintiff's injuries were the result of Walsh's negligence, not Edison's. Thus, in a third-party action, Edison sought indemnity from Walsh on an active-passive negligence theory.

While pursuing the common law negligence action against Edison, the plaintiff was simultaneously seeking a recovery under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) against her employer, Walsh Construction. Shortly before the commencement of

the trial, the plaintiff and Walsh made an agreement in settlement of any potential liability Walsh might have for plaintiff's injuries under the Workmen's Compensation Act; however, the agreement included provisions which potentially affected the common law negligence action pending in the La Salle County Court. The agreement was summarized as follows:

(1) In exchange for a waiver of plaintiff's right to reopen and have further review of any settlement of her workman's compensation claim, Walsh paid a lump sum settlement in the amount of $60,000.

(2) In addition, Walsh waived its right of subrogation under the Workmen's Compensation Act which entitled it to be repaid from any amounts recovered from Edison in the La Salle County lawsuit, including subrogation rights for the $60,000 lump sum settlement and for $30,000 paid previously for disability and medical benefits.

(3) In exchange for Walsh's waiver of its subrogation rights, plaintiff agreed that if she recovered a judgment against Edison in the negligence action, and Edison was successful on its third-party action against Walsh, then plaintiff would not execute on the judgment against Edison or Walsh.

The decisions rendered in the circuit court regarding this agreement are central to the determination we make today.

The issues raised by the complaint and the third-party complaint were tried in a single proceeding by the La Salle County court, despite plaintiff's motion for severance. Before the trial began, plaintiff sought, through a motion *in limine*, to prohibit any reference during the trial to her agreement with Walsh. The court reserved ruling on the motion until the trial had begun. Then, when counsel for Edison sought a determination on the motion, the trial judge concluded that the agreement was in the nature of a covenant not to sue. For that reason no examination of witnesses concerning the agreement was permitted. Edison urges us to find that this decision resulted in reversible error.

Edison characterizes this agreement as something akin to the loan receipt agreement which was approved by the supreme court in *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382. The *Reese* court held that an agreement between the plaintiff and one of two joint defendants was valid so long as the court permitted questioning of witnesses concerning possible bias arising because of the agreement. Where, as here, no such questioning was permitted, Edison believes a new trial must be granted.

On the other hand, the plaintiff and the trial court characterized this agreement as a covenant not to sue. It has been held that covenants not to sue are generally inadmissible before a jury (*Ryan v. Monson* (1961), 33

Ill. App. 2d 406, 179 N.E.2d 449; *Tresch v. Nielsen* (1965), 57 Ill. App. 2d 469, 207 N.E.2d 109), and error occurs when evidence of a covenant is admitted. It was thought that evidence of the covenant would interfere with the jury's function of assessing total damages, and any possibility of double recovery was simply obviated if the court reduced the amount of the verdict by the amount of the settlement before entering judgment. (*Ryan v. Monson; De Lude v. Rimek* (1953), 351 Ill. App. 466, 115 N.E.2d 561.) Although covenants were determined to be inadmissible on the limited issue of assessing damages (*Ryan v. Monson; De Lude v. Rimek*), their inadmissibility has been more generally construed. (*American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 371 N.E.2d 232.) Because of the differing treatment given by the courts to loan receipt agreements and covenants not to sue, both Edison and Pierce argue that the agreement in the case at bar more closely resembles one than the other.

The difficulty in characterizing the instant extrajudicial agreement as either a loan receipt or a covenant arises because, quite simply, it is neither. On a prior occasion we observed that there "exist a whole family of such agreements, with the number of variations 'limited only by the ingenuity of counsel * * *'." (*Schell v. Albrecht* (1978), 65 Ill. App. 3d 989, 991, 383 N.E.2d 15, 17.) As that ingenuity spawns an ever increasing number and variety of hybrid agreements, the futility of attempting to label each mutation becomes increasingly apparent. Rather than trying to fit the new casting into one of several old molds, the courts have enumerated several policy considerations which should be reviewed in the context of each agreement. *Schell v. Albrecht.* See also *Reese v. Chicago, Burlington & Quincy R.R. Co.; Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23; *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58; *Casson v. Nash* (1978), 74 Ill. 2d 164, 384 N.E.2d 365.

One such policy which the trial court should consider as it scrutinizes agreements of this genre was set forth in *Casson v. Nash*:

> "[W]hen a witness whose interest in the outcome of the case is not apparent to the jury may be influenced by the existence of a loan-receipt agreement, the jury may properly consider the effect of the agreement on the credibility of that witness." (74 Ill. 2d 164, 169, 384 N.E.2d 365, 367.)

Where litigants are prohibited from presenting evidence of bias induced by extrajudicial agreements, reversible error results. (*Gatto v. Walgreen Drug Co.*) This policy consideration occupies our attention as we consider the agreement between Pierce and Walsh.

■■ In the action prosecuted by Edison against Walsh, the central question was one of control over the ambulance. At issue was whether the primary

responsibility for supervision and maintenance of the converted van rested with Edison or Walsh, and whether one entity or the other actually exercised active control over the vehicle before the date of Mrs. Pierce's injury. A fact-finder making a determination on this central issue would be greatly persuaded by the testimony of an employee at the first-aid station whose job uniquely caused her to be in and around the ambulance on a regular basis. The plaintiff Pierce was such an employee, and her interest in the third-party action would not have been apparent to the jury unless questioning concerning the Pierce-Walsh agreement were allowed. Indeed, the monetary success of Pierce's action against Edison depended just as much on the outcome of the third-party action as it did on a verdict rendered for Pierce. We prefer to believe that the plaintiff's testimony would have been unchanged absent the agreement with her employer.[1] Nevertheless, in order to afford Edison a fair trial, it should have been permitted to call to the jury's attention the plaintiff's motive for offering testimony biased in favor of Walsh. Further, because the testimony of Pierce would be highly persuasive, we conclude that the failure to permit an inquiry into the possible bias of the witness would constitute prejudicial error requiring a new trial.

■■ Other errors were alleged in the brief filed by Edison before this court. To the extent that those errors deal with the sufficiency of the evidence, we decline to consider them here, as upon retrial the evidence before the jury may differ. In addition, it is urged that sustaining a verdict for the plaintiff, Pierce, without deducting the monies paid to Pierce by Walsh would contravene the policies of this state which disallow double recovery by tort plaintiffs. Again, a different verdict on retrial may render this issue moot, but it should be noted that our courts have universally held that a workmen's compensation recovery is money received by the injured party from a collateral source which should not offset a judgment in an action based on common law negligence. (*Beaird v. Brown* (1978), 58 Ill. App. 3d 18, 373 N.E.2d 1055; *Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 190 N.E.2d 315; *Hosey v. State* (1965), 25 Ill. Ct. Cl. 144.) Finally, the plaintiff on her cross-appeal postures that it was error to deny her leave to file an amended complaint four days into the trial. If, on retrial, this leave is sought in a more timely manner, we believe the trial

---

[1] Representative of that testimony is the following exchange between the plaintiff and Walsh's attorney:

"Q: This day to day contact that you had with Commonwealth people would include periodic complaints by you about the ambulance, correct:

A: Correct.

Q: And these—let me ask you this; why would you make complaints to Commonwealth?

A: They were right there. They would be there when I got right back from one of these incidents and I knew that they really had control ° ° °."

court may exercise its discretion to reach a different result. For that reason, to consider plaintiff's argument is now premature.

After reviewing the oral and written arguments of counsel, and in reliance on the authorities hereinbefore set forth, we conclude that the defendant, Commonwealth Edison Company, is entitled to a new trial of this cause.

Reversed and remanded.

HEIPLE and STOUDER, JJ., concur.