TU HOU LAM, Plaintiff-Appellant, v. LYNCH MACHINERY DIVISION OF LYNCH CORPORATION, Defendant-Appellee.

First District (5th Division)    No. 87—1461

Opinion filed November 14, 1988.—Rehearing denied January 25, 1989.

---

John M. Christian and Sandra D. Oliszewicz, both of Phelan, Pope & John, Ltd., of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (David R. Schmidt and Hugh C. Griffin, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Tu Hou Lam, appeals from a judgment for defendant, Lynch Machinery Division of Lynch Corporation (Lynch), in a personal injury action. She contends that the trial court erred in not allowing her to examine the potential biases of witnesses. Plaintiff also appeals from an order of the trial court denying her post-trial motion for judgment notwithstanding the verdict or, alternatively, a new trial on the ground that the verdict was against the manifest weight of the evidence.

The record discloses that plaintiff, while working as an employee for Tootsie Roll Industries (TRI), was injured when her right arm was caught in a candy-wrapping machine in 1980. The machine had been manufactured by Lynch and sold to a TRI factory in New Jersey in 1966. In 1981, plaintiff sued Lynch on negligence and strict li-

ability grounds, the latter action being dismissed because the appropriate statute of limitations had expired. That dismissal is not appealed.

Lynch answered plaintiff's negligence complaint, denying any negligence, and asserted the defense of contributory negligence on the part of plaintiff. Lynch later filed a third-party claim for contribution and indemnity against TRI, asserting that plaintiff's injuries were caused by TRI's removal of a guard from the rotating shaft in which plaintiff's arm had been caught. On February 6, 1987, Lynch and TRI's attorneys offered to settle with plaintiff for $200,000 plus a waiver of TRI's worker's compensation lien. Plaintiff had earlier recovered approximately $96,000 on her worker's compensation claim. Plaintiff rejected that offer and also a subsequent offer by Lynch of $300,000 on February 9. The next day, February 10, TRI and Lynch had the third-party claim dismissed after entering into a contribution and settlement agreement. Before trial on the morning of February 11, plaintiff advised the court that she would accept Lynch's settlement offer of $300,000 and was informed that it had been withdrawn. The trial commenced with plaintiff taking the stand. After the end of the first day of trial, it was learned that the agreement between Lynch and TRI provided that TRI would pay 70% of any settlement with plaintiff or 70% of the amount in any verdict rendered against Lynch.

There were many *in limine* sessions during which plaintiff argued that the jury should be informed of the verdict-sharing agreement. Plaintiff contended that the agreement gave TRI a substantial financial interest in the outcome of the case, thus raising the issue of possible bias of witnesses who were TRI employees. Several times the court, with Lynch's approval, offered to *voir dire* the witnesses outside the presence of the jury, an-offer initially rejected by plaintiff because she contended it was insufficient protection. Subsequently, the court decided no *voir dire* was necessary. Plaintiff made a written motion *in limine* to inform the jurors of the agreement, moved for a mistrial, repeatedly sought permission to cross-examine the witnesses on the issue, made an offer of proof at the end of trial, and proferred two jury instructions regarding the agreement, all of which were rejected by the trial court.

At trial, the witnesses testifying were plaintiff, her treating physician, three TRI employees, one retired TRI employee, one Lynch employee, and one expert witness for each party. After a five-day trial on the negligence complaint, the jury returned a verdict for Lynch and against plaintiff. After denial of her post-trial motions,

plaintiff filed this appeal.

The crux of this appeal is whether plaintiff was prejudiced and, thus, denied a fair trial, by the trial court's refusal to permit the jury to be informed of the verdict-sharing agreement between TRI, plaintiff's employer, and defendant Lynch. The trial court's decision appears to be based on several grounds: the policy of encouraging good-faith settlements pursuant to the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*); the prejudice to Lynch by revealing its insurance coverage and settlement negotiations; a failure to show how the agreement was relevant to any jury issue between Lynch and plaintiff, thus creating a possibility that the case would be decided on an improper basis; and prejudice to plaintiff arising from the jury's awareness of her worker's compensation payment.

We have found no Illinois case law directly addressing the precise issue in this case, *i.e.*, whether a contribution settlement between a defendant and a third-party defendant, which is also plaintiff's employer, should be disclosed to a jury for the limited purpose of showing potential biases of witnesses who are employees of the third-party defendant. However, there is a line of cases wherein loan receipt agreements and covenants not to sue between a plaintiff and one of several defendants have been held relevant and admissible to show bias or prejudice of a witness. We find the rationale underlying the determination of the issue in these cases to be applicable to the present case because of a fundamental similarity between the issues.

Even before contribution among joint tortfeasors was permitted in Illinois, our supreme court in *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, approved the use of pretrial loan receipt agreements between a plaintiff and one of several defendants, the settling defendant then usually being dismissed from the case. In so ruling, the *Reese* court held that when the dismissed defendant thereafter testifies for the plaintiff, the remaining defendant(s) should be protected by being given an opportunity to expose to the jury the witness' possible bias or prejudice resulting from the agreement. However, such evidence should be considered only as to the motive and credibility of the witness, and not as to liability or damages. The court also noted that the potential for this kind of bias is likely to be present, to some degree, in many third-party actions.

The rationale underlying the *Reese* decision was explained by the court in *Casson v. Nash* (1978), 74 Ill. 2d 164, 384 N.E.2d 365, when it held that evidence of a loan receipt agreement was inadmissible to

show bias of a testifying plaintiff because a plaintiff's interest in the outcome of the case is always evident. The *Casson* court stated that "[t]he relevant principle that emerges from *Reese* is that when a witness whose interest in the outcome of the case is not apparent to the jury may be influenced by the existence of a loan-receipt agreement, the jury may properly consider the effect of the agreement on the credibility of that witness." *Casson*, 74 Ill. 2d at 169, 384 N.E.2d at 367.

Since the *Reese* decision, the relevancy of various types of agreements made between a plaintiff and one of several defendants has been discussed in many cases. (See, *e.g., Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23 (loan agreement made during trial between plaintiff and one defendant was not revealed to court or third-party defendant resulting in sham controversy—reversible error); *Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1, 425 N.E.2d 1359 (loan receipt agreement properly excluded from evidence because bias of defendant witness was apparent to jury in light of his counterclaim against other defendants).) In the cases involving such agreements, the courts have ruled that the adversary relationship of the parties must be preserved and one must have an opportunity to show potential bias of a witness. "Only if these twin concerns do not present themselves as a result of the agreement between plaintiff and defendant will the court be satisfied that the integrity of the judicial process is not jeopardized." *Schell v. Albrecht* (1978), 65 Ill. App. 3d 989, 993, 383 N.E.2d 15, 18.

Considering the present case, it is evident that the basic situation differs from the cases discussed above, in that the agreement to share in any judgment entered on the verdict was between a defendant and a third-party defendant which could not be sued by plaintiff because of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). It is also apparent that the agreement did nothing to disrupt the adversarial positions between the parties, plaintiff and Lynch. However, it is clear that the agreement did create a situation wherein it was financially advantageous to the dismissed third-party defendant, TRI, for the jury to find that Lynch was not liable to plaintiff. If Lynch were held liable, TRI would have to pay 70% of any judgment; but if Lynch were found to be free from fault, TRI would pay nothing.

One retired and three current TRI employees testified; the only other witnesses were one Lynch employee, two expert witnesses, and plaintiff's treating physician. It is generally proper to disclose that a witness or his employer has an interest in the litiga-

tion and an employee witness can be cross-examined as to his employer's financial interest in the outcome of the case. *DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 491 N.E.2d 13.

At trial, plaintiff attempted to show that Lynch was liable because, among other things, it did not place a guard over the rotating shaft of the candy-wrapping machine. On the other hand, Lynch's strategy throughout the proceedings, before and after the agreement, was to demonstrate that TRI and/or plaintiff were the negligent parties. Lynch alleged that TRI removed Lynch's guard after it left Lynch's control. Lynch's employee testified that his assembly shop always installed guards on the rotating shaft of all such machines, but he could not specifically remember or identify the machine in this case. It is undisputed that there was no guard on the machine at the time of plaintiff's accident.

All of the TRI employee witnesses were in supervisory positions involving candy-wrapping machines. For the most part, their testimony indicates that they had never seen any shaft guards although there was some contrary testimony from the retired employee. It was also stated that TRI had removed some other guards, not in the shaft area, and had replaced some of the machines' guards with their own guards. The record does indicate some discrepancies between the employees' testimony and their depositions taken years before the agreement was entered into. None of the witnesses had seen the machine before it was shipped from the TRI New Jersey plant. Both expert witnesses agreed that a guard had been placed on the shaft at some unknown time. Thus, the testimony of TRI employees is crucial as to which party was or was not negligent.

An analogous situation arose in *Pierce v. Commonwealth Edison Co.* (1981), 101 Ill. App. 3d 272, 428 N.E.2d 174, wherein the plaintiff was injured while riding in a van converted into an ambulance and sued Edison. Edison filed a third-party action against plaintiff's employer, which action revolved around the issue of whether Edison or the employer was responsible for the ambulance. Prior to trial on the third-party complaint, plaintiff and her employer entered into an agreement concerning any judgment she might obtain from Edison. At trial, plaintiff testified about Edison's control over the ambulance. The jury was unaware of the agreement. This court found prejudicial error and remanded the cause for a new trial on the basis that:

> "A fact-finder making a determination on this central issue would be greatly persuaded by the testimony of an employee at the first-aid station whose job uniquely caused her to be in and around the ambulance on a regular basis. The plaintiff

Pierce was such an employee, and her interest in the third-party action would not have been apparent to the jury unless questioning concerning the Pierce-Walsh agreement were allowed. *** [I]n order to afford Edison a fair trial, it should have been permitted to call to the jury's attention the plaintiff's motive for offering testimony biased in favor of Walsh." *Pierce*, 101 Ill. App. 3d at 276, 428 N.E.2d at 177-78.

■■ ■ In *Pierce* and all of the cases discussed above, the courts emphasized that if an extrajudicial agreement has the potential to bias a witness' testimony as to a relevant issue, disclosure is necessary in order to maintain the fairness and integrity of our judicial system. It is this basic policy that causes us to conclude that plaintiff was prejudiced by being foreclosed from informing the jury of the potential for biased testimony. Because of this policy consideration, we do not believe that the difference in party alignment in the present case is relevant. The fact remains that two parties, defendant and a dismissed third-party defendant, entered into an agreement which could affect trial testimony, and that the existence of the agreement should have been disclosed to the jury for the limited purpose of witness credibility.

We prefer to believe, as did the court in *Pierce*, that the witnesses' testimony would have been the same absent their employer's agreement with Lynch. However, in the interest of fairness, we must reverse and remand the cause for a new trial. Accordingly, there is no necessity to consider plaintiff's argument that the evidence was against the manifest weight of the evidence.

Reversed and remanded.

LORENZ, P.J., and PINCHAM, J., concur.