**John BACHENSKI, Plaintiff,**

v.

**Mark MALNATI, Defendant.**

**No. 91 C 817.**

United States District Court, N.D. Illinois, E.D.

Jan. 5, 1993.

James E. Ocasek, Cooney and Conway, Chicago, IL, for plaintiff.

Robert D. McHugh, Williams & Montgomery, Chicago, IL, for defendant Mark Malnati.

Richard Lee Stavins, Robbins, Salomon & Patt, Chicago, IL, for John Hawkotte and Flash Cab Co.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

On November 27, 1992 the jury in this personal injury action stemming from a taxicab-automobile collision returned a verdict against plaintiff John Bachenski ("Bachenski") and in favor of the then sole remaining defendant, Mark Malnati ("Malnati"). Bachenski's counsel has filed a timely post-trial motion for judgment n.o.v. (see Fed.R.Civ.P. ("Rule") 50(b)) or alternatively for a new trial (see *id.* and Rule 59(a) and (b)). Responses have been filed by counsel for Malnati and by counsel for the other two original defendants, Flash Cab Co. ("Flash Cab") and John Hawkotte

("Hawkotte").[1] For the reasons stated in the memorandum opinion and order, Bachenski's motion is denied in its entirety.

### Malnati

Although consideration of Malnati's situation may not be the appropriate opener in purely sequential terms, this opinion will first speak to the portion of Bachenski's motion that attacks what the jury did at trial. To be sure, on the facts that were before it the jury might well have found that Malnati as well as Hawkotte had been negligent[2]—indeed, as this Court sat listening to the lawyers' closing arguments along with the jury, it conceptualized a presentation that it believed would have been powerfully persuasive toward a finding of Malnati's negligence (coupled with that of Hawkotte). But Monday morning quarterbacking is always easier than actually being on the field of play,[3] and what controls here is that the issue of Malnati's negligence vel non posed the classic totally-fact-intensive jury question. There is no room for a holding by this Court that the jury's verdict in Malnati's favor was contrary to the manifest weight of the evidence (which the lawyers for Bachenski and Malnati agree is the legal standard to be employed here).

As for the only other issue that bears on the trial itself, Bachenski asserts one other question that was necessarily raised immediately before trial and that this Court ruled on with equal speed. At the voir dire conference held on Friday, November 20, Flash Cab and Hawkotte were still in the case and were represented by separate counsel (they were then third-party defendants responding to Malnati's Third Party Complaint). But on the morning of trial (Monday, November 23) counsel for Malnati and counsel for Flash Cab and Hawkotte advised this Court and Bachenski's counsel that over the weekend they had settled Malnati's third-party claim on the basis that Flash Cab would pay 90% of any judgment that might be entered against Malnati. Importantly the lawyer representing Malnati (or more accurately in real world terms, the lawyer for his insurer) expressly represented to this Court and to opposing counsel that Malnati himself was and would remain uninformed of the settlement agreement or any of its terms, in order to avoid any possibility of affecting his testimony at trial.

Taken by surprise by that development—a development that converted the litigation into a two-party lawsuit based entirely on the question whether Malnati was at all negligent—Bachenski's lawyer immediately raised the question whether he should be permitted to put the fact and terms of the settlement before the jury. As Bachenski's post-trial Motion [2–3][4] says:

> The issue then arose regarding the jury's knowledge of the agreement between the parties and Plaintiff's counsel[s] ability to cross-examine witness as to the agreement to show potential bias.

For that purpose Bachenski's counsel submitted for this Court's consideration the decision in *Tu Hou Lam v. Lynch Mach.*

**1.** As explained a bit later in the text, neither Flash Cab nor Hawkotte was involved in the jury trial.

**2.** Because Bachenski (who was a passenger in the taxicab struck by Malnati's car) was unquestionably nonnegligent himself, and because if Malnati were to have been found negligent to *any* degree the actions of each driver (both Malnati and Hawkotte) would have been a concurrent proximate cause of Bachenski's injuries, such a finding of any negligence at all on Malnati's part would have rendered him fully liable for Bachenski's proved damages. And that would have been so even though Hawkotte (and through him Flash Cab) was primarily at fault. Needless to say, the jury was properly instructed on that score without any objection by Bachenski's counsel (or by Malnati's counsel, for that matter).

**3.** This Court of course recognizes that the formulation that it envisioned for Bachenski's jury presentation, though logical and persuasive from this Court's viewpoint, might have fared no better before the jury than the closing argument that was actually made by Bachenski's counsel.

**4.** Bachenski's lawyer has inexplicably failed to number the pages of his post-trial motion. Fortunately it runs only 10 pages, so that it has been only a minor annoyance for this Court to be compelled to provide numbering for purposes for referring to the motion.

*Div. of Lynch Corp.*, 178 Ill.App.3d 229, 235, 533 N.E.2d 37, 41 (1st Dist.1989).

 But this Court ruled that Bachenski's own accurate characterization of the reason that any inquiry into such settlements is permitted to take place before a factfinding jury also carried the death warrant for Bachenski's motion. Here is how *Tu Hou Lam* stated that reason (*id.*, emphasis added):

> In *Pierce* [v. *Commonwealth Edison Co.*, 101 Ill.App.3d 272, 276, 428 N.E.2d 174, 177–78 (3d Dist.1981)] and all of the cases discussed above, the courts emphasized that *if an extrajudicial agreement has the potential to bias a witness' testimony as to a relevant issue, disclosure is necessary* in order to maintain the fairness and integrity of our judicial system.

That has been expressly *reconfirmed* as the reason for such disclosure in *Batteast v. Wyeth Lab., Inc.*, 137 Ill.2d 175, 184, 560 N.E.2d 315, 319 (1990) (which case precedes a repetition of that identical substantive statement with the statement that "The Illinois position on this point is well established").[5] But where as here Malnati had *no* knowledge of the settlement, by definition no potential existed for any warping of his testimony by bias stemming from the fact of settlement.[6] Thus Bachenski's second ground for resisting the loss that he

sustained at the hands of the jury is also rejected.

### Flash Cab and Hawkotte

Bachenski was the victim of the interaction of two rules of law—one federal and one state—that between them eliminated Flash Cab and Hawkotte as targets of his lawsuit. Although this Court has written an unpublished opinion on the subject earlier (1992 WL 71799, 1992 U.S.Dist. LEXIS 5451 (N.D.Ill. Mar. 31, 1992), denying reconsideration of its oral ruling of February 19, 1992), the circumstances will be repeated briefly here.

This action was initially filed against all three potentially liable parties—Malnati, Flash Cab and its alleged agent Hawkotte—by the predecessor counsel for Bachenski a bit less than a month before the two year statute of limitations (Ill.Rev.Stat. ch. 110, ¶ 13–202) would run out on March 2, 1991. Although Flash Cab was served immediately by Bachenski's then lawyers, Hawkotte was *never* served. Instead he was first brought into the lawsuit much later, when on December 26, 1991 (nearly 2 years and 10 months after the collision took place) *Malnati* served him with the summons and Third Party Complaint seeking contribution.

---

5. Except on the issue of Malnati's possible bias (a subject that is always relevant because it bears on a witness' credibility), the fact and terms of the settlement would clearly be inadmissible. First of all, Fed.R.Evid. 408 expressly bars such admissibility as a basis for proving Malnati's liability. Moreover Malnati's compromise of his claim against Flash Cab and Hawkotte by his agreement to bear 10% of any possible recovery that might be awarded in Bachenski's lawsuit would create the potential for enormous prejudice if it were made known to the jury, which might well view that agreement as an *admission* that Malnati bore some degree of fault in causing the collision—and remember that *any* degree of fault on Malnati's part, however small, would entitle Bachenski to a judgment for all of his damages. In fact, even if the jury did not view the agreement as such an admission, its knowledge that Flash Cab and Hawkotte were bearing 90% of any recovery might well encourage the jury to return a verdict in Bachenski's favor even though it considered that Hawkotte was wholly at fault and that

Malnati was not negligent at all—on the theory that it would be better to make Bachenski whole for his substantial injuries, even at the cost of an innocent party (Malnati in this hypothetical example) being forced to bear a small percentage of the damage award.

6. Bachenski Mem. [4], grasping for straws, says that the fact that Malnati was unaware of the settlement meant that it "could hardly have been bona fide." Although we are always careful to insulate juries from direct evidence about the presence of insurance coverage (perhaps unrealistically so, given just about everyone's knowledge that he or she carries liability insurance), the fact remains that the principal (if not the sole) real party in interest in any award of damages was Malnati's insurer. Thus the settlement most likely placed Malnati's insurer, rather than Malnati himself, ultimately at risk. But in any case Bachenski and his lawyer scarcely have any standing to complain as to the bona fides (or lack of bona fides) of a perfectly understandable compromise settlement.

When Hawkotte then filed a motion to be dismissed from Bachenski's Complaint under Rule 4(j), Bachenski's counsel responded by showing that they had made repeated efforts to *mail* summonses to Hawkotte at several different addresses—each of those efforts having been returned by the postal authorities marked "unclaimed." No showing was made as to why Bachenski's counsel continued to resort to the mails, rather than employing a professional process server to bring Hawkotte into the case, or relatedly as to why Bachenski and his counsel had been unable to do what Malnati's counsel had shown to be possible (by his obtaining service on Hawkotte shortly after Malnati's Third Party Complaint had been filed against Hawkotte).

Where service on a defendant has not been accomplished within the 120–day period established by Rule 4(j), that Rule mandates dismissal of that defendant absent a showing of good cause (*Tso v. Delaney*, 969 F.2d 373, 375–77 (7th Cir.1992) is only one of the most recent of a passel of decisions from our Court of Appeals so holding). And of course the burden of showing good cause rested squarely on Bachenski's shoulders (again *Tso* and *Williams v. Leach*, 938 F.2d 769, 771–72 (7th Cir.1991) are among a host of cases addressing the problem in those terms). Based on what had been said (and not said) to this Court by Bachenski's counsel in an attempted explanation of the failure to obtain service on Hawkotte, this Court ruled on February 19, 1992 that no such good cause had been shown, and it therefore granted Hawkotte's motion for dismissal.[7]

Bachenski's lawyers then moved for reconsideration, coupling that motion with the tender of a proposed Second Amended Complaint ("SAC") naming Hawkotte.

Counsel for Hawkotte opposed both those efforts, asserting the statute of limitations as the basis for resisting the filing of the SAC. This Court's already-referred-to March 31, 1992 memorandum opinion and order then rejected both of Bachenski's motions.

■ At that point, then, Hawkotte was out of Bachenski's case—but Flash Cab was not. Flash Cab then moved for a summary judgment decreeing its dismissal as well, invoking established Illinois doctrine[8] under which (1) any with-prejudice dismissal of a principal or an agent mandates the dismissal of the party—whether agent or principal—that has a respondeat superior relationship with the first-dismissed party and (2) a dismissal on statute of limitations grounds is considered a dismissal on the merits for that purpose (*Towns v. Yellow Cab Co.*, 73 Ill.2d 113, 124–25, 382 N.E.2d 1217, 1221–22 (1978); *Martin v. Yellow Cab Co.*, 208 Ill.App.3d 572, 574–75, 567 N.E.2d 461, 463–64 (1st Dist.1990) (a case startlingly parallel to this one); *Stroud v. News Group Chicago, Inc.*, 215 Ill.App.3d 1006, 1010–11, 576 N.E.2d 152, 155–56 (1st Dist.1991) (same)). That left this Court with no choice other than to grant Flash Cab's motion to be dismissed out of the case, and this Court did so in an oral ruling.

■ Now Bachenski's counsel urges that Bachenski "should be granted a new trial [sic] as to the defendant John Hawkotte" (Motion [4]) and "should be granted a new trial [sic] as to defedant [sic] Flash Cab Company" (Motion [9]). But the unfortunate consequences of the interaction of Rule 4(j) and the *Towns–Martin–Stroud* doctrine were caused not by this Court but by the failure of Bachenski's counsel to

---

7. Even though Rule 4(j) prescribes that such dismissal is without prejudice as such, the Rule's drafters expressly contemplated that the real-world effect of the dismissal would be a termination *with* prejudice if the statute of limitations has run out in the meantime (see, e.g., *Tso*, 969 F.2d at 376–77; *Williams*, 938 F.2d at 772–73).

8. Because federal jurisdiction was predicated solely on diversity of citizenship, *Erie v. Tompkins* principles dictated that Illinois law (includ-

ing its choice of law doctrine) provided the rules of decision. All of the litigants have considered that as calling for the application of Illinois substantive law, Illinois being not only the state where the collision occurred but also the domicile of all of the litigants except Bachenski, who was here in Chicago on business when he took the taxicab that Malnati struck just before the cab had completed an illegal U-turn.

**614**

avoid being wrecked on the shoals despite the clear warnings of those rules of law—just as the unfavorable jury verdict against Malnati was caused not by this Court but by the nonpersuasiveness of Bachenski's counsel in urging Malnati's negligence. At least since *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) the rule of law in federal courts has been that the consequences of a lawyer's handling of a case are to be borne by the client—as *Link, id.* at 633–34, 82 S.Ct. at 1390–91 put it succinctly:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

### Conclusion

Bachenski had his day in court against Malnati, and he cannot complain that the factfinder jury saw things differently than he would have liked. And although Bachenski did not enjoy the same kind of day in court against either Flash Cab or Hawkotte, that result was occasioned by the inexorable operation of well-established rules of law. Bachenski's post-trial motion is denied in its entirety.