**John BACHENSKI, Plaintiff–Appellant,**

v.

**Mark MALNATI, Flash Cab Company, and John Hawkotte, Defendants–Appellees.**

**No. 93–1273.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1993.

Decided Dec. 13, 1993.

Rehearing and Suggestion for Rehearing In Banc Denied Jan. 25, 1994.

James E. Ocasek (argued), Cooney & Conway, Chicago, IL, for plaintiff-appellant.

James K. Horstman (argued), Williams & Montgomery, Chicago, IL, for Mark Malnati.

Richard Stavins (argued), Robbins, Salomon, Wolf, Schlesinger & Miller, Chicago, IL, for John Hawkotte and Flash Cab Co.

Before FLAUM and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

This appeal is brought by a plaintiff in a diversity case, whose claims against two defendants were dismissed prior to trial and whose claim against a third defendant was rejected by a jury. The plaintiff challenges both the pre-trial dismissals and the district court's refusal to upset the jury's verdict. We affirm all around.

I.

This case stems from an automobile accident that occurred in Chicago on March 2, 1989, in which a taxicab owned by defendant Flash Cab Company (Flash) and driven by defendant John Hawkotte collided with a car driven by defendant Mark Malnati. Plaintiff John Bachenski was a passenger in the taxi and on February 7, 1991, filed suit against

Malnati, Hawkotte and Flash in federal district court, basing jurisdiction on diversity of citizenship.[1] Bachenski asserted liability against Malnati and Hawkotte on negligence theories and against Flash solely on a *respondeat superior* theory. Malnati and Flash were timely served with process. They appeared, filed answers and also filed crossclaims for contribution against one another. Hawkotte was not served.

On November 12, 1991, Malnati filed what was effectively a crossclaim for contribution against Hawkotte and accomplished service on him on December 26, 1991. On February 4, 1992, Hawkotte moved to dismiss Bachenski's complaint for failure to serve within 120 days after the filing of the complaint, as required by Federal Rule of Civil Procedure 4(j). On February 19, the district court granted the motion and dismissed the complaint against Hawkotte without prejudice. Bachenski then moved for leave to refile against Hawkotte. The district court denied the motion because the operative state two-year statute of limitations had run.

On April 17, 1992, Flash moved for summary judgment, arguing that the dismissal of Hawkotte, although technically without prejudice, effectively worked an adjudication on the merits because of the interim running of the limitations period, and thus mandated the dismissal of Bachenski's claim against it under the applicable Illinois rule that an adjudication on the merits in favor of a servant bars an action premised on *respondeat superior* against his master. The district court granted the motion and dismissed Bachenski's claim against Flash with prejudice. As a result, Bachenski was left with a claim against Malnati; Flash and Hawkotte remained in the case only because of Malnati's contribution claims.

Just prior to trial, these contribution claims were dropped pursuant to a settlement between Malnati, Hawkotte and Flash, under the terms of which Flash agreed to pay 90% of any judgment entered against Malnati. Counsel for Malnati represented to the court that Malnati personally was un-

---

1. Bachenski's wife, Anita Bachenski, was also a passenger in the cab at the time of the accident and was originally a co-plaintiff in this action. Her claim, however, was dropped early in the course of the litigation.

aware of the existence of the settlement agreement, which in fact was executed between the parties' respective insurance companies. · Counsel then moved *in limine* to prevent cross-examination on this topic at trial. The district accepted counsel's representation about Malnati's ignorance of the settlement and granted the *in limine* request.

The case proceeded to trial on the claim against Malnati. After a four day trial, the jury returned a verdict for Malnati. Bachenski then made a timely motion for a judgment as a matter of law under Rule 50 or, in the alternative, a new trial under Rule 59. In his motion Bachenski reasserted his opposition to the earlier dismissals of Hawkotte and Flash from the case and the court's evidentiary ruling precluding inquiry·into the settlement agreement at trial. He also attacked the jury verdict·for Malnati as being against the manifest weight of the evidence.

The district court denied Bachenski's motion in its entirety, 809 F.Supp. 610. The court quickly rejected Bachenski's contention that the jury verdict was contrary to the manifest weight of the.evidence, writing that "what controls here is that the issue of Malnati's .negligence' vel non posed the classic totally-fact-intensive jury question." Turning to the exclusion of evidence of settlement at trial, the district court observed that because the existence of the agreement was unknown to Malnati, it did not have the potential to bias his testimony. In concluding that it properly cordoned the jury off from evidence of the settlement, the district court noted that jury knowledge of the settlement would have had a potential for prejudice because such an agreement could be construed as an admission of fault by Malnati or could encourage the jury to redress Bachenski's injuries at the acceptable cost of Malnati bearing a small fraction of the burden. The court next addressed Bachenski's claim that he had good cause under Rule 4(j) for not serving Hawkotte within 120 days of

the filing of the complaint. The court found that Bachenski's continued unsuccessful attempts.to achieve mail service,[2] his failure to employ a professional process server, and the fact that Malnati was able to serve Hawkotte without much difficulty all indicate that Bachenski did not have good cause for his failure to serve Hawkotte.

Finally, the court revisited its earlier oral decision to dismiss Bachenski's claim against Flash on summary judgment. The court first noted that under Illinois law, the applicable substantive law of the case, the dismissal on the merits of either the principal or agent in a *respondeat superior* relationship mandates the dismissal of the other, and a dismissal on statute of limitations grounds is considered a dismissal on the merits for that purpose. In its oral ruling the court had pointed out that although the Rule 4(j) dismissal of Hawkotte was technically without prejudice according to the language of the Rule, the Rule's drafters expressly contemplated that the effect of such a dismissal would be with prejudice if the statute of limitations had run in the meantime. The court explained that it therefore felt compelled to dismiss Flash from the case. Thus, Bachenski's motion was denied completely. Bachenski now appeals to this court claiming the district court erred by dismissing his claims against Hawkotte and Flash, by barring mention of the inter-defendant settlement at trial, and by refusing to upset the jury verdict for Malnati. Jurisdiction in this court being proper, we affirm on all grounds.

## II.

### A.

▆▆▆ Bachenski has a tough row to hoe to convince a court that the evidence educed at trial cannot support a verdict for Malnati. Although we review the district court's denial of a Rule 50 motion *de novo, see Timmerman v. Modern Industries, Inc.,* 960 F.2d 692, 697

**2.** In its original order dismissing Hawkotte from the case, the district court concluded that *repeated efforts to obtain service by mail cannot* without more satisfy the "good cause" exception to Rule 4(j)'s 120 day requirement. The court reasoned that this follows from the fact that Rule

4(c)(2)(D) only specifies that the consequence to a party for not returning the notice and acknowledgment of receipt of summons by mail is having to bear the costs of the personal service made necessary by his recalcitrance.

(7th Cir.1992), the standard under Illinois law for a judgment notwithstanding the verdict is strict.[3] A verdict will be upset and a contrary judgment entered only if "all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, 513 (1967).

■ Because the testimony of Malnati is the sole factual source preserved in the appellate record, we can tell the tale of this case only from his point of view. Malnati recounts that on the day of the accident he was driving along Elston Avenue in a thirty mile per hour zone at a clip of about twenty-five to thirty miles per hour. Light snow had just begun to fall, when a car that was apparently parked on the other side of the two-way street, with its lights out and no turn signal flashing, suddenly pulled out and began to make a sharp U-turn into Malnati's lane when Malnati was about two car lengths away. Malnati testified that he tried to avoid an accident by applying his brakes, swerving to his right and sounding his horn. Nevertheless, the cars collided. At the moment of impact, the other car was moving approximately ten miles per hour and Malnati's speed had slowed to approximately fifteen miles per hour.

■ These facts speak for themselves. Bachenski attempts to nullify what appears from our limited view of the case to be an eminently sensible verdict. Indeed, on the record developed before us, it is difficult to imagine any other verdict that would have been as reasonable. Malnati reacted like a typical driver would in such a situation. Undeterred by the weakness of his case on the facts, Bachenski makes a brief and half-hearted argument that Malnati was unquestionably negligent *per se* for failure to appropriately slow in adverse weather conditions. *See* Ill.Ann.St. Ch. 625 § 5/11–601(a). However, he has done nothing to develop the necessary factual or legal bases for even a colorable, let alone mandated, conclusion of *per se* fault—for example, he has provided us no solid evidence about the prevailing weather conditions nor citation of Illinois authority applying the very general language of the slow-down statute in the manner he wishes. Bachenski is clearly not entitled to judgment as a matter of law against Malnati, and his alternative Rule 59 request for a new trial based on the weight of the evidence is similarly without merit.[4] The district court was correct to deny both.

B.

Bachenski complains of another problem with the trial, aside from the result. He contends that the district court erred by prohibiting cross-examination of Malnati on the subject of the settlement that Malnati's insurance company reached with Flash, whereby Flash agreed to pay 90% of any judgment against Malnati in exchange for Malnati dropping his contribution claims against Flash and Hawkotte. Bachenski maintains that this settlement was a potential source of bias in Malnati's testimony and, as such, it was an appropriate and important subject for exploration on cross-examination.

■ Witness bias is a quintessentially appropriate topic for cross examination, even when a settlement related to the pending litigation is the supposed root of the alleged bias.[5] In this case however, the district court accepted the representation of counsel that Malnati personally did not know and would not be informed about the existence of

3. Federal courts must follow the state law JNOV standard when sitting in diversity. *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1382 (7th Cir.1990).

4. While the federal law standard governing new trial motions is somewhat less severe than the Illinois JNOV standard (a new trial may be granted only if the jury's verdict is against the clear weight of the evidence, *see Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1182 (7th Cir.1992), cert. denied —— U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993)), we review denials of new trial motions deferentially for an abuse of discretion. *See id.* And in this case there is no doubt that the district court's denial of the new trial motion was proper.

5. Evidence of settlement is of course inadmissible to prove liability. *See* Fed.R.Evid. 408. But "[t]his rule ... does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness...." *Id.*

the settlement (as his insurance company was the real party in interest). In doing so the district court acted well within the bounds of its discretion, and nothing in the record suggests that this representation turned out to be false. Thus, the court legitimately could conclude that the Malnati–Flash settlement agreement would not be a source of bias, and it justifiably decided to allow no mention of it at trial. Further, the court observed that disclosure of the existence of the settlement and the provided for reduction in Malnati's financial exposure could only serve the improper function of persuading the jury that Bachenski should be compensated because Malnati would only have to bear a small fraction of the cost of the verdict. Finally, the court noted that the jury also might construe such a settlement as an admission of partial fault by Malnati. Barring questions about the settlement for these reasons under the circumstances of this case was certainly a reasonable and, we think, proper exercise of the district court's discretion over evidentiary matters.[6] *See Quinn v. Neal,* 998 F.2d 526, 534 (7th Cir.1993); *United States v. Jungles,* 903 F.2d 468, 478 (7th Cir.1990).

### C.

Bachenski also challenges the district court's refusal to excuse his noncompliance with Rule 4(j)'s deadline for serving Hawkotte with process. He argues that the court should have found that there was "good cause," under the Rule's saving provision, for his failure to satisfy the Rule's general mandate that service be made within 120 days after the filing of the complaint. To demonstrate Hawkotte's transient nature and the existence of good cause for the failure to track Hawkotte down, Bachenski points to his repeated but unsuccessful efforts to mail service to Hawkotte and asserts that he retained private investigators on several occasions to search for Hawkotte (also always without success). He contends that his efforts were diligent and thus the district court necessarily erred by refusing to find good cause for his continuing inability to locate and serve Hawkotte.

■ The plaintiff bears the burden of demonstrating good cause under Rule 4(j). *See Geiger v. Allen,* 850 F.2d 330, 333 (7th Cir.1988). Furthermore, determining whether good cause exists in a particular case is a decision left to the sound discretion of the trial court that we seldom upset. *See Tso v. Delaney,* 969 F.2d 373, 375 (7th Cir.1992); *Geiger,* 850 F.2d at 333. Accordingly, beyond occasional nonexhaustive references to relevant considerations, to date we have not

---

**6.** In addition, even if Malnati knew about the settlement or, because of Flash's and Hawkotte's disappearance from the case, suspected that some sort of agreement was reached, we fail to see how such an awareness could contribute to a showing of bias with respect to Malnati, already a directly interested party. If anything, Malnati's knowledge of the settlement would bolster his credibility because, by shifting the bulk of the burden of an adverse judgment elsewhere, the settlement reduced Malnati's financial stake in the outcome of the case. *Cf. Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230, 1235 (7th Cir.1983) (stating that settlement agreement eliminating witness' personal interest in the case "could only have enhanced his credibility"). Bachenski cites to us two Illinois cases in which trial courts' refusals to permit disclosure of contribution claim settlements were adjudged erroneous, and he claims that they support his argument against exclusion in this case. Aside from the fact that we are governed by *federal* evidence law, even when we wear our diversity hat, *see* Fed.R.Evid. 1101(b); *Rabon v. Automatic Fasteners, Inc.,* 672 F.2d 1231, 1238 n. 14 (5th Cir.1979), neither of the state cases to which Bachenski refers in fact supports his position. In *Lam v. Lynch Machinery Div. of Lynch Corp.,* 178 Ill.App.3d 229, 127 Ill.Dec. 419, 533 N.E.2d 37 (1988), a settlement was reached whereby a corporation, not a defendant to the plaintiff's claim, agreed to pay 70% of any judgment entered against the main defendant in exchange for a dismissal of a contribution claim against it. The execution of this settlement created in certain witnesses, who were employees of this corporation, an interest in a particular outcome to the litigation, namely one which would not expose their employer to liability for a large chunk of a judgment for the plaintiff. *See id.* 127 Ill.Dec. at 422, 533 N.E.2d at 40. *Batteast v. Wyeth Laboratories, Inc.,* 137 Ill.2d 175, 148 Ill.Dec. 13, 560 N.E.2d 315 (1990), also is not on point. There, the settlement provided that the plaintiff discharge a defendant as a party in exchange for, among other things, his promise to testify in a certain way at trial. *See id.,* 148 Ill.Dec. at 17, 560 N.E.2d at 319. Like the *Lam* settlement, and unlike the settlement between Malnati and Flash, the *Batteast* settlement obviously had a real potential to bias a witness' testimony on a relevant issue in the case.

attempted to lay down a precise test for good cause under Rule 4(j). Certainly, however, a plaintiff's attempts at service need be "[a]t the very least ... accompanied by some showing of reasonable diligence" before good cause must be found. *Tso*, 969 F.2d at 377.

 In this case, the district court examined Bachenski's diligence and found it wanting. The court, first of all, was not impressed by the repeated attempts to mail service to Hawkotte. Nor should it have been. *Adatsi v. Mathur*, 934 F.2d 910, 911 (7th Cir.1991) and *Tso*, 969 F.2d at 373, make clear that in this circuit Rule 4(c)(2)(C)(ii) means what it says: if the acknowledgment form included in a mailed service packet is not returned within 20 days, service "shall be made" by other means. Further mailings are not authorized and, even if they conceivably could effect proper service if acknowledged, additional attempts at service by post are not in themselves representative of adequate diligence. *See id.*

The district court also considered Bachenski's failure to employ a professional process server after it became clear that mail service was not working. Bachenski insists that he hired private investigators both in April and November of 1991 to locate Hawkotte. There is very little in the record, however, to substantiate the degree of any such efforts. Only in his post-trial motion did Bachenski's counsel submit material at all indicating the nature of the measures that were undertaken. The submission consisted of a brief affidavit by counsel in which he stated—in essentially no greater detail than paraphrased here—that investigators were hired in April to locate Hawkotte, that investigators were again hired in November and that at that time they inquired into Hawkotte's whereabouts with Hawkotte's ex-wife, with mechanics at Flash and with "[p]ersons at the Batyk Shop" but to no avail. We cannot say

that after Bachenski had failed to achieve service for almost a year since the filing of the complaint the district court was obligated to find good cause from this scanty presentation—which, by the way, only described in any detail investigative efforts that took place many months after the running of the 120 day clock. The district court's refusal to find good cause for Bachenski's lengthy inability to achieve service is further buttressed by the fact that Malnati was able to serve Hawkotte promptly after filing a contribution claim against him. No explanation was made why Bachenski could not manage to do in a year what Malnati accomplished in 45 days. And in the course of that year Bachenski never filed a motion under Rule 6(b) requesting additional time despite the district court's reminder 100 days into the service period that he was flirting with Rule 4(j) dismissal. *See Quann v. Whitegate–Edgewater*, 112 F.R.D. 649, 661 (D.Md.1986) (stating that failure to make motion for enlargement of time for service is "at least some evidence of lack of diligence"). Under the circumstances of this case we can find no abuse of discretion.[7]

### D.

 Finally, we turn to the district court's dismissal of Bachenski's claim against Flash. Our inquiry here concerns the appropriate consequence of a particular application of a federal procedural provision in the context of a rule of governing state law.[8] The Illinois rule that concerns us has come to be known as the *Towns* doctrine, named for the case in which it found its most prominent modern exposition, *Towns v. Yellow Cab Co.*, 73 Ill.2d 113, 22 Ill.Dec. 519, 382 N.E.2d 1217 (1978). The doctrine states that when *respondeat superior* is the sole asserted basis of liability against a master for the tort of his servant an adjudication on the merits in favor of either the master or servant precludes

**7.** Bachenski also contends that Flash's counsel breached a mid-May agreement to accept service for Hawkotte. Counsel for Flash (and now Hawkotte) denies such an agreement was ever formalized. We need not resolve what the understanding in fact was, however, because even if Bachenski suspended his efforts to serve Hawkotte in reasonable reliance on the representations of Flash's counsel, it is undisputed that by early

July Bachenski was clearly informed in a correspondence from Flash's counsel that the latter would not accept service for Hawkotte. Thus, at its best this argument can only explain one and a half months of nonservice.

**8.** All agree that Illinois law is the applicable substantive law of this case.

**1378**

suit against the other. *See id.* 22 Ill.Dec. at 523, 382 N.E.2d at 1221. The rule developed as an offshoot of the doctrine of *res judicata*.[9] Although a master and his servant are not technically in privity, the preclusive principles underlying *res judicata* were thought to have equal application in the *respondeat superior* setting because the operative facts and law controlling a servant's direct liability are always identical to those that determine the vicarious liability of his master (so long as the agency relationship and its scope are not in dispute). If the master is vicariously liable, the servant must be directly liable (and vice versa); if the master is not vicariously liable, the servant cannot be directly liable (and vice versa).[10] *See id.* at 523–24, 382 N.E.2d at 1221–22. The *Towns* doctrine is established law in Illinois and has been applied upstream as well as down to dismiss both masters and servants. *See, e.g., Ziemba v. Anania,* 231 Ill.App.3d 99, 172 Ill.Dec. 878, 880–81, 596 N.E.2d 157, 159–60 (1992); *Stroud v. News Group Chicago, Inc.,* 215 Ill.App.3d 1006, 159 Ill.Dec. 483, 487, 576 N.E.2d 152, 156 (1991); *Towns,* 22 Ill.Dec. at 525, 382 N.E.2d at 1223.

██ The issue to be resolved in this case is whether the Rule 4(j) dismissal of Hawkotte should be construed as an "adjudication on the merits" in favor of Hawkotte, the servant, so as to activate the *Towns* doctrine and mandate the dismissal of Flash, the master.[11] Bachenski's argument that the 4(j) dismissal of Hawkotte cannot be an adjudication on the merits is simple and appealing.

Rule 4(j)'s language is plain: a dismissal for failure to achieve timely service shall be "without prejudice." How can such a dismissal ever constitute an adjudication on the merits? A dismissal without prejudice under the Federal Rules means that the court's present decision to dismiss in and of itself erects no barriers to a subsequent filing, and thus Bachenski is correct that it seems distinctly inapt to regard such a dismissal as an adjudication on the merits.

But in this case, Flash counters, the dismissal of Hawkotte, while nominally without prejudice, is functionally with prejudice. Because the statute of limitations had already expired when the district court dismissed Bachenski's claim against Hawkotte, there was no possibility the claim could ever be revived, and thus the dismissal was final and fatal to Bachenski's claims against Hawkotte at the time it was entered. Flash points out that in other contexts courts have regarded similar dismissals that were technically without prejudice as effectively with prejudice. For instance, although a dismissal without prejudice is normally not a final decision appealable under 28 U.S.C. § 1291, courts have allowed appeals of 4(j) dismissals that are entered after the statute of limitations has run. *See, e.g., Geiger,* 850 F.2d at 331 n. 2; *Green v. Humphrey Elevator and Truck Co.,* 816 F.2d 877, 878 n. 4 (3rd Cir.1987). More fundamentally, a cause of action cannot be revived after the statute of limitations has run merely because it was dismissed under Rule 4(j). *See* David D. Siegel, Practice

**9.** Observe that the Illinois rule that a servant is not a necessary party to a *respondeat superior* action against his master, *see McCottrell v. City of Chicago,* 135 Ill.App.3d 517, 90 Ill.Dec. 258, 259–60, 481 N.E.2d 1058, 1059–60 (1985), and its consequences (*e.g.* a time bar preventing the initiation of an action against a servant does not vitiate a timely instituted claim against the master), are not inconsistent with the *Towns* rule so justified.

On a related note, Bachenski complains that when it orally explained its decision to dismiss his claim against Flash the district court misstated the *McCottrell* rule. The court seemed to believe, at the time, that a suit against Flash alone would have to be dismissed once a suit against Hawkotte, though never brought, would become time barred. While *McCottrell* is to the contrary, any error of law in this regard is irrelevant to the validity of the decision to dismiss.

**10.** Of course all this assumes one master and one servant. If one servant is adjudged not liable but fault may also lie with the separate acts of another servant who has not yet prevailed on the merits, the *Towns* doctrine would not warrant a blanket dismissal of the master as vicarious liability may still be premised on the latter servant's nonadjudicated actions. *See Suarez v. Ro–Mar Terminal Warehouse,* 244 Ill.App.3d 228, 184 Ill. Dec. 631, 632, 613 N.E.2d 1223, 1224 (1993).

**11.** In view of our disposition of this issue we need not resolve whether the district court's denial of Bachenski's motion for leave to refile against Hawkotte—for stated statute of limitations reasons—constitutes an additional or alternative adjudication on the merits that would frustrate Bachenski's claim against Flash.

Commentaries, 28 U.S.C.A. Federal Rules of Civil Procedure: Rules 1 to 11, at 85, 171 (1992). As a result of the necessary interplay between Rule 4(j) and statutes of limitations, courts, in characterizing post-limitations-period 4(j) dismissals, have sometimes employed language equating such a dismissal with a dismissal with prejudice. *See, e.g., Woods v. Indiana University–Purdue University,* 996 F.2d 880, 884 (7th Cir.1993) ("Even though Rule 4(j) dictates a dismissal without prejudice, the dismissal effectively operates with prejudice if the statute of limitations has run in the meantime."). Thus, Flash concludes, the dismissal of Bachenski's against Hawkotte, coming as it did after the limitations period had expired, was really a dismissal with prejudice and thus an adjudication on the merits that barred Bachenski from continuing its action against Flash.

We are skeptical of this argument[12] but need not bother with it further because at issue in this case is not what a federal court would label an adjudication on the merits for its own purposes, but rather what an Illinois court would consider an "adjudication on the merits" for the purposes of the *Towns* rule. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We must inquire into the consequence to Bachenski's action against Flash that an *Illinois* court would determine should follow from the dismissal of Hawkotte under the circumstances of this case. Namely, would a dismissal for failure to achieve timely service on a servant after the expiration of the applicable statute of limitation be deemed a bar to the continuation of an action against the master? A perusal of Illinois law reveals that the answer to this question is clearly yes.

Indeed, on several occasions the Illinois courts have applied the *Towns* rule to dismiss a *respondeat superior* claim against a master when the predicate negligence claim against a servant has previously been dismissed for failure to achieve timely service and the statute of limitations had run in the interim. *See, e.g., Rogaris v. Oliver,* 246 Ill.App.3d 876, 186 Ill.Dec. 814, 816–17, 617 N.E.2d 53, 55–56 (1993); *Ziemba,* 172 Ill. Dec. at 880–81, 596 N.E.2d at 159–60; *Stroud,* 159 Ill.Dec. at 487, 576 N.E.2d at 156; *cf. Williams v. Bolsten,* 184 Ill.App.3d 832, 133 Ill.Dec. 100, 102–03, 540 N.E.2d 966, 968–69 (1989) (dismissing claim against servant when claim against master was dismissed for failure of service after the running of the limitations period). These cases plainly demonstrate that Illinois courts would recognize the *Towns* dismissal of Flash as a mandatory result of the dismissal of Hawkotte under the circumstances of this case. For example, in *Rogaris,* the plaintiff, a passenger in a cab involved in a collision, sued both the driver for negligence and the cab company under the doctrine of *respondeat superior.* The driver was never served, and long after the statute of limitations expired, the cab company moved to dismiss the claim against driver for failure to exercise reasonable diligence in serving him. The motion was granted. The cab company then moved for summary judgment under the *Towns* doctrine, claiming that because the statute of limitations clock had already run the dismissal of the driver operated as an adjudication on the merits for the purposes of the doctrine. Summary judgment was granted on this ground and, consistent with other Illinois cases on point, affirmed on appeal. *See Rogaris,* 186 Ill. Dec. at 816–18, 617 N.E.2d at 55–57. It would be anomalous, to say the least, that an action based on these facts would abate in an Illinois court under the *Towns* doctrine yet continue in a federal court purportedly applying that same rule of state law.

12. The problem with the argument is that it is more stylistic than analytical. It attempts to turn what is really no more than a description of the real world consequences of a post-limitations 4(j) dismissal into a new rule of law. After all, it is the running of the statute of limitations, not the dismissal, that bars a refiling of the action. If the dismissal came a minute *before* the time bar elapsed, no one would argue that a suit filed the next day should be dismissed because of the "effectively with prejudice dismissal" under Rule 4(j). Rather, the time bar is what would do the heavy lifting. Similarly, it is the time bar that makes a case appealable after a late-in-the-day 4(j) dismissal. This is but a long way of saying Rule 4(j) spells out precisely its own legal consequences. We are not authorized to add to them. *See Powell v. Starwalt,* 866 F.2d 964, 966 (7th Cir.1989) ("[S]peculation about the outcome of a third suit does not justify dismissing this one with prejudice [under Rule 4(j).]").

**1380**

We can imagine an argument that the Illinois courts' decisions in the above line of cases were mandated by the structure of the Illinois Supreme Court Rules, that is the *procedural* rules of the Illinois courts, and thus do not set out *substantive* law which the federal courts must follow when sitting in diversity. It is true that the Illinois courts looked to their rules of procedure in determining what effect should be accorded a dismissal for untimely service after the running of the statute of limitations for *Towns* doctrine purposes. *Because* Supreme Court Rule 103(b) mandates "dismissal with prejudice" for a "failure to exercise reasonable diligence to obtain service ... after the expiration of the applicable statute of limitations" and Supreme Court Rule 273 indicates that such an involuntary dismissal of an action "operates as an adjudication upon the merits," the Illinois courts have concluded that the *Towns* doctrine extends to such dismissals. *See, e.g., Williams,* 133 Ill.Dec. at 102–03, 540 N.E.2d at 968–69. However, it would be fallacious to conclude from this that there is a federal law characterization of the dismissal of Hawkotte that governs whether Flash can benefit from the application of the *Towns* doctrine. That state rule means to us only what it would mean in a state court. Its scope and significance are wholly matters of state law, and to divine an interpretation of one of its essential elements different from that given by the Illinois courts would be clearly contrary to the principles of *Erie.* The process by which state courts formulate the contours of their rules of law cannot be dispositive of our *Erie* analysis. If a state rule of law is applicable in a federal diversity case, it is applicable *in toto,* no matter the course of its evolution. Accordingly, we cannot slavishly rely on labels to add to or detract from the essential substance of the *Towns* rule as developed by the courts of Illinois. As no one in this case has suggested (and properly so) that the *Towns* doctrine does not govern in diversity cases when appropriately invoked, the question of what constitutes an "adjudication on the merits" under that state doctrine can only be answered by reference to state law. And it is clear that, as far as Illinois courts are concerned, when a dismissal is granted for untimely service after the running of the statute of limitations such an "adjudication on the merits" has occurred.

### III.

For the foregoing reasons the judgment of the district court is affirmed in its entirety.

AFFIRMED.